■ FRANCO COSTA, Appellant, v FANTASIA DISTRIBUTING CORPORATION et al., Respondents. — Order of the Supreme Court, New York County, entered June 2, 1980, which granted plaintiff-appellant's motion for reargument of the order of April 18, 1980, granting appellant the immediate turn over to him of his works of art upon condition that he post security in the amount of $50,000, and upon reargument modified the previous order of April 18, 1980 to the extent of reducing the amount of security required to $30,000, affirmed, without costs. In this action for conversion, damages, rescission and injunctive relief, plaintiff moved pursuant to CPLR 2701 for an order requiring respondents to turn the works of art over to him. Respondents did not oppose the motion but requested security. Special Term did not abuse its discretion in requiring appellant to post security in the sum of $30,000. CPLR 2701, in pertinent part provides: "The court * * * may order personal property capable of delivery which is the subject of the action * * * delivered to such person as it may direct, with such security as the court shall direct * * * if: * * * 2. a party has such property in his possession, custody or control and it belongs or is due to another party, where special circumstances make it desirable that payment or delivery to such other party should be withheld". In this case there are such circumstances. It is asserted by respondents that appellant, an artist, voluntarily gave the artworks to respondents under an agreement pursuant to which respondents would sell and exploit the artworks, that a dispute arose as a result of which petitioner abrogated the agreement, that appellant is indebted to respondents in connection with their mutual business enterprise and that appellant does not reside in the United States. Conditioning the return of the property upon posting of a bond was appropriate. We find no basis for appellant's claim that respondents effected a *de facto* attachment and violated appellant's property rights contrary to due process. The situation here is akin to an action to enforce a lien. It is not a case of a pretrial seizure by respondents of appellant's property (see *Fuentes v Shevin,* 407 US 67; *North Ga. Finishing v Di-Chem, Inc.,* 419 US 601), inasmuch as respondents had lawful possession of the artworks pursuant to agreement with appellant. Concur — Birns, J. P., Markewich and Yesawich, JJ.

Fein and Sullivan, JJ., dissent in a memorandum by Sullvian, J., as follows: In this turnover application (CPLR 2701) plaintiff appeals from so much of an

order of Special Term as required him to post a bond in the sum of $30,000 as a condition to the court's direction that defendants return his artwork to him. (Originally the court had required a $50,000 bond, but reduced the amount on reargument.) We believe the requirement of an undertaking should be vacated since its effect is to give defendants the benefits of an extrajudicial attachment of plaintiff's property. In December, 1979, the parties signed an agreement of exclusive representation granting defendants the right to market plaintiff's artwork in the United States. Pursuant to this agreement plaintiff delivered many of his original paintings and reproductions to defendants. Within three to four months after execution of the agreement the relationship came to an end. Each of the parties placed responsibility for the dissolution on the other. Defendants, claiming damages for breach of contract thereupon sued plaintiff, and he, in turn, demanded return of his artwork. When defendants refused he commenced this action in which he seeks, *inter alia,* rescission and claims conversion of his property. CPLR 2701 authorizes a court to order that personal property which is the subject of an action be paid into court or delivered to such person as the court may direct. (See *Goldstein v Goldstein,* 29 Misc 2d 105, 106; also, generally, *Firemen's Mut. Benevolent Assn. of City of N. Y. v Clifford,* 201 App Div 315.) In this proceeding defendants have laid no claim of right to the paintings. In fact, they did not oppose the turnover application but, instead, requested that a bond be posted to protect them for liabilities already incurred in plaintiff's behalf. Defendants' fortuitous possession of some of plaintiff's artwork at a time when they claim he owes them money does not justify withholding his property without a demonstration of specific entitlement to the artwork itself. Special Term found that although defendants had agreed to relinquish control of the artwork, they still had rights in the works. But rights in the distribution of the paintings are not equivalent to rights to possession. The artwork was never turned over to defendants to be held as security for plaintiff's peformance of his contract. By suing for damages for breach of contract defendants have impliedly invoked the doctrine of anticipatory breach and, by their own concession, apparently no longer claim any rights to the artwork itself. In an affidavit submitted at Special Term one of the defendants stated: "Quite obviously, the continuation of the business relationship between plaintiff and Fantasia is an impossibility. Nevertheless, Fantasia does reserve all of its right to pursue plaintiff for the damages Fantasia has sustained by reason of his material breach of the December 6, 1979 agreement." Defendants' willingness to surrender the artwork is further evidence that they have no claim of right to the works themselves. In defense of its imposition of a bond as a condition to turnover, Special Term noted that "the paintings themselves might be the only source of satisfaction of the judgment." This language shows that the court viewed the bond not as security for a release of any purported rights defendants might have in the property, but rather as security for any potential money judgment. In requesting a bond defendants stated that it would "provide [them] some measure of security in the event they prevail in their claim for money damages for breach of contract by plaintiff." As valid as this point may be it will not justify a *de facto* attachment of plaintiff's property. Of course, in their own independent action, defendants are free to seek an attachment of plaintiff's property, either on notice (CPLR 6210) or ex parte (CPLR 6211). But, because the constitutional right of due process is involved in any ex parte attachment, a full and immediate posttermination hearing must be provided. *(North Ga. Finishing v Di-Chem, Inc.,* 419 US 601; see *Mitchell v W. T. Grant Co.,* 416 US 600, 611; also *Fuentes v Shevin,* 407 US 67.) Spurred by a concern that this State's procedures were inadequate, the Legislature, in 1977, redrafted CPLR

article 62 to conform ex parte attachment procedures to constitutional due process requirements. Thus, under CPLR 6211 (subd [b]) a plaintiff must within five days after levy of an ex parte attachment move on notice to confirm the attachment. Upon such motion, the provisions of CPLR 6223 (subd [b]) are applicable: "Burden of proof. Upon a motion to vacate or modify an order of attachment the plaintiff shall have the burden of establishing the grounds for the attachment, the need for continuing the levy, and the probability that he will succeed on the merits." In his application for a turnover order the court placed the burden on plaintiff, the party seeking to regain possession of his artwork, rather than on the party who had *de facto* attached the property, and failed to address the issue of defendants' probability of success on the merits. Moreover, although attachment is available only where money damages have been demanded by the party seeking it (CPLR 6201), defendants have asserted no such claim for relief in this action. In fact their complaint in the related action is not even part of this record. Defendants argue that attachment is not at issue because they have "certain rights in works of art created by plaintiff", and that it is the exercise of these rights which has provoked the turnover application. Yet, their opposing affidavits belie such argument. "Fantasia's need for this security is underscored by the fact that, by his own admission, plaintiff is an Italian national with no roots in the United States *** His ability to respond in damages is minimal to say the least. *** What defendants obviously wish to avoid is a situation where, following the termination of this litigation and an entry of judgment in their favor, plaintiff would have no assets in this country which could be used to satisfy any judgment, and defendants would then be in the unfortunate position of having to chase him to Europe." It is readily apparent that defendants' only motive in retaining the artwork is to secure themselves in the event of a favorable judgment in their independent action by holding the paintings, or an undertaking in lieu thereof, as collateral. Absent compliance with the statutory and constitutional requirements of the provisional remedy of attachment, defendants should not be permitted to effect a *de facto* attachment. CPLR 2701 (subd 2), upon which the majority relies in finding special circumstances to dictate imposing the bond requirement, is inapplicable. That section was drafted originally in 1939 as part of section 978 of the Civil Practice Act, and was designed to avoid the confiscation by foreign governments of property belonging to private persons if delivery pursuant to a turnover order were attempted. (2A Weinstein-Korn-Miller, NY Civ Prac, par 2701.02.) When the CPLR was enacted its drafters took note of the unique circumstances which might prevent a turnover of property to its rightful owner, and continued the protection afforded under the old statute. (See 2A Weinstein-Korn-Miller, NY Civ Prac, par 2701.03, citing Judicial Conference, Memorandum in Support of Sen Int No. 3235, Pr No. 3523, Ass Int No. 4181, Pr No. 4326 [Feb. 17, 1964].) Clearly, subdivision 2 has no applicability to the circumstances here presented. Accordingly, the order, Supreme Court, New York County, entered June 2, 1980, which granted reargument, and upon reargument, awarded plaintiff the immediate turnover of his works of art upon condition that he post security in the amount of $30,000, should be modified to the extent of deleting the requirement that a bond be posted and, except, as thus modified, affirmed.