OPINION OF THE COURT
 

 Meyer, J.
 

 To sustain a warrant of attachment against the property of a defendant, the moving papers must establish both a cause of action and a ground for attachment as to that particular defendant. As to an attachment issued without ground, the owner of the property, though not a party to the underlying action, may, in a proceeding pursuant to CPLR 6212 (subd [e]), recover damages for mental distress upon a showing of actual malice. On the appeal by Ford
 
 *297
 
 Motor Credit Company (Ford) there should, therefore, be an affirmance of the Appellate Division’s order of February 10,1981, brought up for review by Ford’s appeal from that court’s order of June 3, 1983. We conclude, however, that there is insufficient proof of actual malice and, therefore, on the cross appeal of the property owners (Hoehns) from so much of the latter order as deleted damages for mental distress, we affirm.
 

 I
 

 In May, 1977, Ford commenced an action against Hickey Ford Sales, Inc. (Sales), Hickey Realty, Inc. (Realty), H.M.S. Rotary, Inc., John F. Hickey and Mary I. Hickey. The first cause of action alleged that Sales had received vehicles from Ford under floor plan financing which it thereafter sold without paying to Ford the purchase price of the vehicles. The second cause of action alleged that the other defendants had executed guarantees to Ford of amounts due by Sales under guarantees waiving notice of nonpayment or protest. On May 12,1977, Ford obtained an ex parte order of attachment on the basis of affidavits alleging that Sales had obtained its credit line fraudulently by representing that it owned equipment of a value in excess of $90,000 when in fact it owned no such equipment, that Realty had received some $200,000 on sale of its real estate and that Realty and John F. Hickey were about to depart the State and remove the proceeds of the real estate closing to the State of Florida. The affidavits made no mention of Mary I. Hickey. The attachment order directed the Sheriff of any county to levy at any time before final judgment upon property within its jurisdiction in which the defendants had an interest. The notice to the Sheriff of Albany County -issued by Ford directed only attachment of personal property, consisting of motor parts and funds.
 

 On August 9, 1977, Ford began a special proceeding, entitled against John F. Hickey and Realty only, to require payment of funds to the Sheriff. Mary I. Hickey was not named as a respondent. By order dated September 23, 1977, Realty and John F. Hickey were directed to pay over the funds in quéstion to the Sheriff and the order of
 
 *298
 
 attachment was continued “in full force and effect against all of the respondents” (emphasis supplied).
 

 On September 9, 1977, Ford filed with the Sheriff a notice of attachment of real property, entitled in the original action, purporting to levy on premises located at 17 Pheasant Lane, Menands, Albany County, as property of John F. Hickey and Mary I. Hickey, and that notice was recorded on the same day in the Albany County Clerk’s office. In fact the Pheasant Lane property, which had been in the names of both John and Mary Hickey, had been conveyed to Mary I. Hickey alone on July 30,1971. By deed dated June 5, 1978, Mary Hickey conveyed the property to James G. Hoehn and Barbara K. Hoehn. At the closing a mortgage for $163,000 was executed by the Hoehns to State Bank of Albany (Bank). Because the title search failed to turn up Ford’s notice of attachment, the Hoehns and the Bank took without knowledge of it. Both the deed and the mortgage were recorded on August 16, 1978.
 

 In December, 1978, Ford was granted summary judgment in the original action against all defendants and, after an assessment hearing in June, 1979, obtained a judgment in the amount of $397,955.14. It then delivered to the Sheriff an execution on the Pheasant Lane property and on October 22, 1979, the Sheriff issued a notice of sale at public auction of the property. The Hoehns and the Bank then began separate proceedings pursuant to CPLR 6223 to vacate the attachment and notice of sale. Special Term held the attachment valid and directed that the sale proceed, but, upon the filing of notices of appeal and an undertaking, stayed the sale pending the determination of the appeal.
 

 On appeal the Hoehns and the Bank argued that the attachment was invalid because it was directed only against property of defendants other than Mary Hickey, because the affidavits on the basis of which it was granted set forth no ground for attachment of Mary Hickey’s property, and because it had not been confirmed as required by CPLR 6211 (subd [b]), as revised effective September 1, 1977. The Appellate Division by order dated February 10, 1981, vacated the orders of May 12, 1977 and September
 
 *299
 
 23, 1977, insofar as they purported to be orders of attachment against the Menands property, and remitted for determination of damages pursuant to CPLR 6212 (subd [e]), holding that the May order was based upon a petition which, while it named Mary I. Hickey in its caption, did not ask for an attachment against her property and that the September order was made in a proceeding to which Mary I. Hickey was not a party.
 

 At the subsequent hearing, the Hoehns sought damages for their mental distress in addition to attorney’s fees and costs. They testified to a series of distressing incidents including embarrassment upon first learning of the proposed sale of their home from friends who had seen the public notice, and repeated visits and phone calls from people interested in buying the premises. They also presented testimony of an attorney, conceded to be an expert in real estate matters, that he had advised Ford’s counsel in early October, 1979 that he did not think the attachment against Mary Hickey on the Menands property was valid. Ford’s attorney, called as a witness by the Hoehns and questioned concerning his authorization to take the steps he took on behalf of Ford and whether he had been advised that the attachment was invalid, repeatedly invoked the attorney-client privilege.
 

 Ford argued before Special Term that CPLR 6212 (subd [e]) spoke only of defendants and that, therefore, the Bank and the Hoehns, not having been parties to the original action, could recover nothing under that section. It contended also that damages for mental distress were, in any event, unauthorized either by statute or case law. On the first point, Special Term held itself bound by the remitti-tur. As to damages for mental distress, the court noted that there was evidence of legal, though not of actual, malice, but held' Ford not responsible for malicious acts of its agents which it had not approved or ratified. It ruled, however, in reliance on
 
 Cullen v Nassau County Civ. Serv. Comm.
 
 (53 NY2d 492), that malice need not be proved to recover damages for mental distress. Its judgment of May 16, 1982, therefore, awarded the Hoehns $5,000 each, in addition to fees and costs incurred, and awarded the Bank its fees and costs incurred in invalidating the attachment.
 

 
 *300
 
 On Ford’s appeal from the judgments fixing damages, the Appellate Division set forth the reasoning supporting its earlier order that damages for the Hoehns and the Bank be assessed in a CPLR 6212 proceeding, but held that damages for mental distress could be awarded only under the outrageous conduct standard declared in
 
 Fischer v Maloney
 
 (43 NY2d 553). It, therefore, by its order of June 3, 1983, modified the judgment, on the law and the facts, by deleting the awards of damages for mental distress to the Hoehns, and otherwise affirmed. Justice Levine, concurring in the result, reasoned that mental distress damages could be awarded on evidence of legal malice and without proof of outrageous conduct, but found the record devoid of proof of legal malice.
 

 From the June 3, 1983 order Ford appeals, bringing up for review the earlier nonfinal order of February 10, 1981, which to the extent it invalidated the attachment and directed determination of damages pursuant to CPLR 6212 (subd [e]) necessarily affected the final judgment of May 26, 1982.
 
 [1]
 
 The Hoehns cross-appeal from the Appellate Division’s deletion of the award to each of them of damages for mental distress. Those appeals present three issues: (1) Was there a valid attachment against the Menands property? (2) Does CPLR 6212 (subd [e]) authorize an .award of damages to persons such as the Hoehns and the Bank, who had an interest in the property attached but were not defendants in the action in which the order of attachment was granted? (3) May damages for mental distress be awarded upon the evidence presented at Special Term?
 
 [2]
 
 For the reasons that follow, we answer the first and third questions in the negative and the second in the affirmative.
 

 
 *301
 
 II
 

 The Appellate Division held the attachment invalid as to Mary I. Hickey’s property because, although she was named in the caption of the action and the order granting the attachment, and that order directed levy on “property in which the defendants have an interest” (emphasis supplied), the moving papers asked for an order of attachment against the property of John F. Hickey and Realty only. Without pausing to analyze the correctness of that reasoning, we prefer to put our conclusion of invalidity upon what we regard as a more fundamental ground — the absence from the moving papers of any ground for attachment against Mary I. Hickey’s property.
 
 [3]
 

 More than 50 years ago, in
 
 Zenith Bathing Pavilion Fair Oaks S. S. Corp.
 
 (240 NY 307, 312), we held that “At least as to each [of two or more defendants] there must be evidence that would be sufficient to sustain the warrant if each had been sued separately instead of all of them together.” In that case, it is true, we held the warrant of attachment invalid as to all but one of the defendants because plaintiff’s papers failed to demonstrate the existence of a cause of action against any defendant but that one,
 
 [4]
 
 but the principle applies as well to the establishment of the ground for attachment. That is both the clear implication of the above-quoted sentence from the
 
 Zenith Bathing
 
 opinion and the specific requirement of CPLR 6212. Subdivision (a) of that section provides that to obtain an attachment plaintiff
 
 “shall show,
 
 by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that the plaintiff will succeed on the merits,
 
 that one or grounds for attachment
 
 provided in section 6201
 
 exist
 
 and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff” (emphasis supplied), and subdivision (e) makes the attaching plaintiff liable for all costs
 
 *302
 
 and damages “if it is finally decided that the plaintiff was not entitled to an attachment of
 
 the defendant’s property”
 
 (emphasis supplied), an issue on which plaintiff has the burden of proof (see CPLR 6223, subd [b]). That the plaintiff must show the existence of a ground for attachment as to each defendant against whom he seeks a warrant necessarily follows
 
 (Executive House Realty v Hagen,
 
 108 Misc 2d 986, 988; see
 
 Maitrejean v Levon Props. Corp.,
 
 45 AD2d 1020). Indeed, to hold that the property of defendant A may be attached solely upon proof that as to defendant B there is ground for attachment would raise serious due process questions (cf. Report of Committee to Advise and Consult with Judicial Conference on Civil Practice Law and Rules, Twenty-Second Ann Report of NY Judicial Conference, 1977, p 249).
 

 Ill
 

 Ford argues that the February 10, 1981 order of the Appellate Division incorrectly remitted for determination of damages under CPLR 6212 (subd [e]) because neither the Hoehns nor the Bank was a defendant in the original action and the subdivision speaks only of an attaching plaintiff’s liability “to the defendant” for an attachment to which plaintiff was not entitled. Why the February 10, 1981 order referred to CPLR 6212 rather than CPLR 6221, which entitles any interested party to seek not only an order of vacatur (see, also, CPLR 6223, subd [a]), but damages as well, is not clear. The two sections are as to recovery of damages
 
 [5]
 

 in pari materia
 
 and to be construed consistently (McKinney’s Cons Laws of NY, Book 1, Statutes, § 221). The more particularly is this so in light of the direction in CPLR 104 that the CPLR be liberally construed to secure the just, speedy and inexpensive determination of civil judicial proceedings, and of CPLR 103 (subd [c]) that such a proceeding shall not be dismissed solely because not brought in proper form. Therefore, the direction in the February 10, 1981 order for determination of damages pursuant to CPLR 6212 presents no basis for our disturbance of the order.
 

 
 *303
 
 IV
 

 On the Hoehns’ cross appeal, we agree, though on different reasoning, with Special Term’s conclusion that damages for mental distress may be awarded in an action such as this.
 
 Cullen v Nassau County Civ. Serv. Comm.
 
 (53 NY2d 492, 496,
 
 supra),
 
 upon which Special Term relied, was a discrimination case and, as we noted in
 
 Batavia Lodge No. 196 v New York State Div. of Human Rights
 
 (35 NY2d 143, 146): “The extremely strong statutory policy of eliminating discrimination gives the Commissioner of Human Rights Division more discretion in effecting an appropriate remedy than he would have under strict common-law principles.” No similar statutory policy can be discerned here, the Judicial Conference Committee having noted only that the basis for the damage provision contained in CPLR 6212 (subd [e]) was “the fact that attachment is a drastic remedy to be used with care” (Twenty-Second Ann Report of NY Judicial Conference, 1977, p 256).
 

 The question then becomes whether damages for mental distress can be recovered under common-law principles. Although, as the Appellate Division noted, damages for mental distress are not generally available in tort actions (cf.
 
 Bovsun v Sanperi,
 
 61 NY2d 219;
 
 Kennedy v McKesson Co.,
 
 58 NY2d 500), there are exceptions to that rule, of which intentional infliction of such distress by outrageous conduct is one
 
 (Murphy v American Home Prods. Corp., 58
 
 NY2d 293, 303). There, thus, is no question but that damages for an attachment procured through such conduct may include recovery for mental distress. However, recovery for mental distress is not limited to situations involving outrageous conduct.
 

 The award of damages under CPLR 6212 and 6221 is governed by the rules of law relating to an action for wrongful attachment. Where, as here, the attachment is void because the papers on which it was issued establish no ground for its issuance, an action may be maintained. Whether the action be denominated for trespass or conversion
 
 (Dyett v Hyman,
 
 129 NY 351;
 
 Day v Bach,
 
 87 NY 56;
 
 Siegel v Northern Blvd. & 80th St. Corp.,
 
 31 AD2d 182; see 30 NY Jur 2d 109, Creditor’s Rights & Remedies, § 204) or
 
 *304
 
 for malicious prosecution through the wrongful use of civil proceedings
 
 (Chappelle v Gross,
 
 26 AD2d 340; see
 
 Metromedia, Inc. v Mandel,
 
 21 AD2d 219, affd 15 NY2d 616;
 
 Wiener v Wiener,
 
 84 AD2d 814; Restatement, Torts 2d, § 674; 2 NY PJI 810-814), the action is closely akin to malicious prosecution (see
 
 Keller v Butler,
 
 246 NY 249, 255;
 
 Willard v Holmes, Booth & Haydens,
 
 142 NY 492; Prosser, Torts [4th ed], § 120, p 853). Damages for emotional distress of a kind normally expected to follow from the wrongful action are recoverable in such an action
 
 (Halberstadt v New York Life Ins. Co.,
 
 194 NY 1, 7; Restatement, Torts 2d, § 681, subd [e]; Prosser,
 
 op. cit.,
 
 p 856). Recovery requires proof not only of lack of probable cause but also of actual, as distinct from legal malice
 
 (Nardelli v Stamberg,
 
 44 NY2d 500), i.e., that the defendant acted with an improper motive. Somewhat more latitude as to proof of malice may be permitted than in a malicious prosecution action based upon criminal proceedings, because the plaintiff in a civil action is motivated solely by his own interests (Prosser,
 
 op. cit.,
 
 p 855). Malice may be inferred from awareness that there is no possibility of success of the action taken
 
 (Pangburn v Bull,
 
 1 Wend 345, 355).
 

 The evidence in the record is, however, insufficient to establish actual malice on the part of Ford, for it shows no more than that the attachment was issued on its behalf by its attorney. That it acted through 'an attorney tends to show the absence of malice
 
 (Hazzard v Flury,
 
 120 NY 223). There were, moreover, not one but two orders of attachment issued in 1977 upon which the 1979 notice of sale was based. That Ford’s attorney was advised prior to sale that another attorney questioned the validity of the attachment is insufficient to establish malice on the part of Ford. Knowledge of its attorney is not necessarily knowledge of Ford, nor would Ford be bound by the attorney’s direction to the Sheriff to proceed with sale, if not authorized, participated in or ratified by Ford
 
 (Bowe v Wilkins,
 
 105 NY 322, 331;
 
 Clark v Woodruff,
 
 83 NY 518, 525;
 
 Brainerd v Dunning,
 
 30 NY 211, 216;
 
 Hill v White,
 
 46 App Div 360, 364).
 

 
 *305
 
 Accordingly, the Appellate Division’s order of June 3, 1983 and the order of February 10, 1981 brought up for review should be affirmed, without costs.
 

 Judges Jasen, Jones, Wachtler, Simons and Kaye concur; Chief Judge Cooke taking no part.
 

 Order appealed from and prior order of the Appellate Division brought up for review affirmed, without costs.
 

 [1]
 

 . Ford’s appeal as of right from the June 3, 1983 order of the Appellate Division brings up for our review those issues pursuant to CPLR 5601 (subd [d]). Not reviewable by us on Ford’s appeal as of right, however, is so much of the judgment of May 26,1982 as fixed the costs and damages to which the Hoehns and the Bank were entitled, because the Appellate Division’s June 3, 1983 order modified by reducing the damages payable by Ford and, thus, the modification was not one by which Ford was aggrieved (CPLR 5601, subd [a]; 7 Weinstein-Korn-Miller, NY Civ Prac, par 5601.25, p 56-52).
 

 [2]
 

 . Ford also argues for the first time before us that the Hoehns, as privies of Mary I. Hickey, are collaterally estopped from attacking the validity of the attachment. That argument was, however, waived by failure to raise it by motion or in the answer (CPLR 3211, subd [e]; see CPLR 3018, subd [b]) and in any event cannot succeed because, as hereafter indicated, Mary I. Hickey is not foreclosed from attacking the validity of the attachment.
 

 [3]
 

 . That she later appeared to defend the action did not validate the attachment, which was not sought to obtain jurisdiction but to prevent removal of property from the State
 
 (Shapiro v Loft, Inc.,
 
 142 Misc 144; 11 Carmody-Wait 2d, NY Prac, § 76:158, p 605).
 

 [4]
 

 . Other cases holding that a warrant of attachment must be vacated if plaintiff’s papers fail to establish a prima facie cause of action or establish that plaintiff must ultimately be defeated are:
 
 American Reserve Ins. Co. v China Ins. Co.
 
 (297 NY 322, 325);
 
 Stines v Hertz Corp.
 
 (22 AD2d 823, affd 16 NY2d 605);
 
 Packer v Caesars World
 
 (54 AD2d 676);
 
 AMF Inc. v Algo Distrs.
 
 (48 AD2d 352).
 

 [5]
 

 . No issue is raised on Ford’s appeal as to the applicability of the concluding sentence of CPLR 6212 (subd [e]), which finds no parallel in CPLR 6221.