OPINION OF THE COURT
Joseph J. Dowd, J.
The District Attorney of Kings County, plaintiff herein (hereinafter called claiming authority [CPLR 1310 (11)]), moves for an order pursuant to CPLR 1317 (2) of the recently enacted CPLR article 13-A (Proceeds of A Crime — Forfeiture), to confirm the ex parte order of attachment dated March 10, 1985 (Honorable Joseph M. Lane). Defendants cross-move for an order pursuant to CPLR 1329 (1), vacating the order of attachment on the grounds that the claiming authority has *977 failed to establish: (1) the grounds for the attachment, (2) the need for continuing the levy, and (3) the probability that the claiming authority will succeed on the merits, and directing the return of the property seized pursuant to the ex parte order of attachment.
The court has considered the claiming authority’s motion papers and the defendants’ cross motions as well as the affirmations and memoranda of law in opposition to the respective motions filed by the parties and the minutes of oral argument dated May 10,1985.
Defendants were originally indicted (indictment No. 1503/ 85) for the crimes of scheme to defraud in the first degree, attempted assault in the second degree (four counts) and petit larceny (two counts).
On May 30, 1985, a superseding indictment (indictment No. 3045/85) was filed which charged defendants, who are physicians, with the crimes of scheme to defraud in the first degree, assault in the second degree (38 counts), attempted assault in the second degree (eight counts), reckless endangerment in the second degree (16 counts) and petit larceny (16 counts). The count charging the crime of scheme to defraud in the first degree in the superseding indictment covers a much greater span of time during which the alleged scheme to defraud occurred than did the first indictment (Nov. 27, 1982 to Mar. 6, 1985, instead of Mar. 6, 1984 to Mar. 6, 1985). The forfeiture statute is only applicable to crimes committed on or after August 1, 1984 (L 1984, ch 669, § 5).
The gist of the crime of scheme to defraud in the first degree is that the defendants, while operating an enterprise known as "Brooklyn Gynecological Center” took urine samples from patients to determine pregnancy and routinely advised them that they were pregnant regardless of the results of the pregnancy test and regardless of whether a pregnancy test was actually performed and, as a result thereof, obtained money.
CPLR article 13-A has as its purpose, as stated by Governor Mario M. Cuomo upon signing the bill, "to take the profit out of crime” (1984 McKinney’s Session Laws of NY, at 3627, 3628). To effectuate that purpose, the statute has been delineated as "civil, remedial, and in personam in nature and [it] shall not be deemed to be a penalty or criminal forfeiture for any purpose” (CPLR 1311 [1]).
*978 Historically, forfeitures are traceable to Biblical[1] and preJudeo-Christian times and were known as "deodands” (Calero-toledo v Pearson Yacht Leasing Co., 416 US 663, 681). Deodands are "spoken of as the spiritual predecessors of forfeiture statutes” (Note, Bane of American Forfeiture Law — Banished at Last?, 62 Cornell L Rev 768, 770), and meant that the value of the offending instrument was forfeited to the king (CaleroToledo v Pearson Yacht Leasing Co., 416 US 663, 680-681, supra). The "legal fiction” of the deodands became part of American jurisprudence and "is the root of the dichotomy between civil and criminal forfeitures” (Comment, Criminal Forfeiture: Attacking the Economic Dimension of Organized Narcotics Trafficking, 32 Am U L Rev 227, 233).
Forfeitures are imposed in criminal as well as civil proceedings and are divided into either in rem or in personam. In rem forfeitures proceed against the "offending” property (2A Weinstein-Korn-Miller, NY Civ Prac ¶ 1311.02, at 13-A-22; Calero-Toledo v Pearson Yacht Leasing Co., 416 US 663, supra; United States v Ambrosio, 575 F Supp 546, 549) and are considered civil proceedings (United States v One Assortment of 89 Firearms, 465 US 354, 363-364). In contrast, in personam forfeitures are against the person’s proprietary interest in the enterprise and the guilty or innocence of the owner is "crucial” (United States v Ambrosio, 575 F Supp 546, 550, supra; United States v Veon, 538 F Supp 237, 242). They are said to be criminal in nature (2A Weinstein-Korn-Miller, NY Civ Prac ¶ 1311.02, at 13-A-25; United States v One Assortment of 89 Firearms, 465 US 354, 363-364, supra). In determining whether a forfeiture statute is civil or criminal, the legislative intent governs and only the "clearest proof’ can negate that legislative intent (see, Abrams v Esposito, 75 AD2d 528, 529, affd 54 NY2d 886, for the reasons stated in 75 AD2d 528; United States v $2500 in US Currency, 689 F2d 10, 12, cert denied sub nom. Aponte v United States, 465 US 1099, reh denied 466 US 994. This Court need not now decide the issue of whether the statute is criminal or civil.
*979 By its provisions, article 13-A is a means of not only seizing the offending property (in rem), it also gives the claiming authority a means of retrieving the proceeds of criminal activity from the offender (in personam). It therefore enables the claiming authority to return the proceeds of a crime to the victim.[2]
Pursuant to CPLR article 13-A, when a criminal defendant is charged with a felony defined in the Penal Law, other than one involving a controlled substance or marihuana as a felony, the crime is considered to be a " '[p]ost-conviction forfeiture crime’ ” (CPLR 1310 [5]). A civil action under article 13-A cannot commence until the defendant is convicted of the felony or "criminal activity arising from a common scheme or plan of which such a conviction is a part” (CPLR 1311 [1] [a]). Therefore, in order for the claiming authority to be able to seek forfeiture of the proceeds of a postconviction forfeiture crime, there must be a conviction. Once that occurs, CPLR 1311 (1) becomes applicable.
CPLR 1311 (1) reads in pertinent part: "A civil action may be commenced by the appropriate claiming authority against a criminal defendant [CPLR 1310 (9)] to recover the property which constitutes the proceeds of a crime, the substituted proceeds of a crime or an instrumentality of a crime or to recover a money judgment in an amount equivalent in value to the property which constitutes the proceeds of a crime, the substituted proceeds of a crime, or an instrumentality of a crime”.
In order to maintain the status quo during the pendency of the criminal action, the claiming authority may be granted a provisional remedy such as attachment (CPLR 1311 [1] [a]; 1312 [1]). Before a provisional remedy is granted, the claiming authority must establish: "(a) there is a substantial probability that the claiming authority will prevail on the issue of forfeiture and that failure to enter the order may result in the property being destroyed, removed from the jurisdiction of the court, or otherwise be unavailable for forfeiture; and (b) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order may operate” (CPLR 1312 [3]; emphasis supplied).
*980 The provisional remedy may be granted without notice, "before or after service of summons and at any time prior to judgment” (CPLR 1317 [1]).
Such an ex parte order of attachment was granted (CPLR 1311 [1] [a]; 1312). In accord with that order, the claiming authority seized defendants’ property consisting of "all movable property located at 630 Ocean Avenue, Apartment P-4, Brooklyn, New York [office equipment] as well as money contained in * * * bank accounts in the name of Maxen Samuel or Maxen Samuel in trust for Judith Samuel [totaling] $320,800”.[3]
In order to meet due process requirements, an order of attachment granted without notice must provide that within a short period of time after levy the claiming authority must move on notice to the defendants to confirm the order of attachment (North Georgia Finishing v Di-Chem, Inc., 419 US 601; Eisenberg v Citation-Langley Corp., 92 AD2d 795; Costa v Fantasia Distrib. Corp., 79 AD2d 921, affd 55 NY2d 615; AMF Inc. v Algo Distribs., 48 AD2d 352; 2A Weinstein-Korn-Miller, NY Civ Prac [f 1317.01, at 13-A-49). The confirmation provision of CPLR 1317 (2) provides, in relevant part: "Confirmation of order. An order of attachment granted without notice shall provide that within a period not to exceed five days after levy, the claiming authority shall move, on such notice as the court shall direct to the defendant * * * for an order confirming the order of attachment * * * Upon the motion to confirm, the provisions of subdivision two of section one thousand three hundred twenty-nine of this article shall apply”. The burden of proof is set forth in CPLR 1329 (2), which provides: "Upon a motion to vacate or modify an order of attachment the claiming authority shall have the burden of establishing the grounds for the attachment, the need for continuing the levy and the probability that he or she will succeed on the merits.”
The claiming authority must show, by affidavit or other written evidence, that "there is a cause of action and showing grounds for relief as required by section one thousand three hundred twelve of this article” (CPLR 1318 [1]). Each element necessary to obtain the provisional remedy of attachment must be established as to each defendant (Ford Motor Credit *981 Co. v Hickey Ford Sales, 62 NY2d 291, 301-302). Under CPLR 1312 (3), the claiming authority’s written evidence must prove a prima facie case (CPLR 1329 [2]; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C6223:5, p 171; see also, Ford Motor Credit Co. v Hickey Ford Sales, 62 NY2d 291, 301, n 4, supra; Gírese, Forfeiture Handbook: Litigation Under CPLR article 13-A, District Attorney’s Association, State of New York, at 74-75, 87 [Feb. 1985]).
Furthermore, in determining whether the claiming authority met its burden, due process requirements apply. "Neither the fact that the deprivation was temporary, pending ultimate resolution at the criminal trial, nor the fact that the defendant was later accorded an opportunity to regain limited use of the property upon the posting of a performance bond, renders the order any less of a 'deprivation’ for the due process purposes” (United States v Spilotro, 680 F2d 612, 617; North Georgia Finishing v Di-Chem, Inc., 419 US 606-607, supra).
First, the court must determine whether the claiming authority has established that there is a "substantial probability” she will prove defendants guilty of a postconviction forfeiture crime (CPLR 1310 [5]; 1312 [3] [a]).
In support of this requirement, the claiming authority has submitted affidavits of Kings County District Attorney’s office Detective Investigators Alma Martinez and Marguerite Cheesman, Ms. Ruby Diaz, who was defendants’ receptionist at the gynecological center, a copy of defendant’s "1985 Professional Diary” containing the names of patients, treatments and fees paid by the patients, and a copy of indictment No. 1503/85 (the original indictment).
Detective Investigators Martinez and Cheesman went to defendants’ Brooklyn medical office in March 1985 and provided urine specimens for testing. Ms. Martinez provided a urine specimen of a 60-year-old co-worker. Defendants’ employee told them that the specimens tested positive for pregnancy. Dr. Judith Comeau-Samuel performed an "internal gynecological examination” on Ms. Martinez and told her that "this examination was necessary in order to determine the position of the fetus”. Ms. Cheesman was told by Dr. Maxen Samuel that he was going to administer general anesthesia "for the procedure (the abortion)”. Each woman then told the doctor that they did not want an abortion and Ms. Martinez was refunded $75 of the $150 fee she paid. Ms. Cheesman was not refunded any part of the $150 paid for the abortion.
*982 Both women were examined at Kings County Hospital by a physician and found not to be pregnant. Nor did they have reason to believe that they were pregnant.
Ms. Diaz, defendants’ receptionist, took urine samples from patients “who understood that the specimen would be tested for evidence of pregnancy.” “[TJhese tests were routinely not performed” and the “procedures to terminate pregnancy were performed with [sic] without regard to proof of pregnancy”. She had been instructed on a routine basis by Dr. Maxen Samuel “to tell women seeking abortions that they were pregnant even though their urine samples * * * had not in fact been tested”.
Defendants present no evidence to refute the contentions presented by the claiming authority. They argue that any inconsistency between the diagnosis made by the doctor at Kings County Hospital and the defendants is merely a difference of opinion and that the claiming authority has failed to meet the necessary burden of proof (cf. Marine Midland Bank v Russo Produce Co., 50 NY2d 31).
In order to secure a conviction under Penal Law § 190.65 (scheme to defraud in the first degree), the prosecutor must prove that the defendants engaged in “a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises” (Penal Law § 190.65 [1]) and that they obtained property from one or more of those persons (Penal Law § 190.65 [2]; see, People v White, 101 AD2d 1037; People v Lennon, 107 Misc 2d 329; People v Lasek, 94 Misc 2d 1007). It is also necessary to prove the identity of "at least one person from whom the defendant so obtained property * * * but it shall not be necessary to prove the identity of any other intended victim” (Penal Law § 190.65 [2]). "[T]he essence of the crime of scheme to defraud * * * is the nefarious character of the scheme rather than the dollar loss of the victims” (People v Palmer, 108 AD2d 545, 546).
The court finds that the claiming authority has met its burden insofar as proving that defendants will be convicted of the postconviction crime of scheme to defraud in the first degree.
The claiming authority has demonstrated that defendants and their employees informed patients that their urine specimens would be tested to determine pregnancy. Those sped *983 mens were never tested. Notwithstanding, the patients were told that the urine specimens proved positive for pregnancy and the patients, relying upon such representation, paid money for various purposes. This clearly represented a fraud.
Secondly, the claiming authority must prove that the failure to enter the order of attachment "may result in the property being destroyed, removed from the jurisdiction of the court, or otherwise be unavailable for forfeiture” (CPLR 1312 [3] [a]; emphasis added); in other words the need for continuing the levy (CPLR 1329 [2]).
In support of this contention, the claiming authority, by affidavit, has established that defendant Maxen Samuel, a physician practicing in the State of New York, is a resident alien. Upon conviction, he will face not only the loss of his medical license, he will also face deportation. If defendant is convicted of a felony he will have the incentive to leave this country and, therefore, the present incentive to transfer the property to his homeland. Also submitted is an affidavit of Deputy Chief Investigator for the District Attorney’s office, Mr. Vicente White, verified May 9, 1985, in which Mr. White states that on March 21, 1985, he was informed by a Mr. Perez, who is the superintendent of the apartment building at 630 Ocean Avenue, Brooklyn, New York, where defendants maintained their office, that Maxen Samuel told Mr. Perez that he intended to sell the medical equipment at that location. Subsequent to March 21,1985, Deputy Chief Investigator White was informed by Mr. Perez that Maxen Samuel had told him that he, Maxen Samuel, "was not going to sell the equipment because his attorney had advised him not to do so”.
Under the forfeiture statute, all that need be proved in order to secure an attachment is that the failure to enter the attachment "may result in the property being destroyed, removed from the jurisdiction of the court, or otherwise be unavailable for forfeiture” (CPLR 1312 [3] [a]; emphasis supplied; cf. CPLR 6201 [3]; Loco X-Ray Sys. v Fingerhut, 88 AD2d 425, 429, appeal dismissed 58 NY2d 826). An actual assignment or disposition of the property is not necessary. The affidavit of Deputy Chief Investigator Vicente White, coupled with the fact that defendant Maxen Samuel is a resident alien, shows that there is a possibility that the property will not be available for forfeiture. The money seized pursuant to the order of attachment is liquid in nature, and the property seized can be made liquid. The proceeds can be easily transferred to defendants’ homeland in order to prevent their being *984 used to satisfy any monetary judgment in the forfeiture action.
Therefore, the claiming authority has met her burden of proving that defendant Maxen Samuel "may” transfer the property, proceeds or substituted proceeds of the crime to a country outside the jurisdiction of this court making it difficult, if not impossible, to satisfy a judgment against defendants. In making this determination, the court is aware of CPLR 1311 (9), which provides that criminal liability and sanctions may be imposed upon a defendant in a forfeiture action "who knowingly and intentionally conceals, destroys, dissipates, alters, removes from the jurisdiction, or otherwise disposes of, property specified in a provisional remedy ordered by the court or in a judgment of forfeiture in knowing contempt of said order or judgment”. Notwithstanding, if there is a possibility that defendant may transfer the liquid assets or substituted proceeds, then even by imposing the sanctions found in CPLR 1311 (9), the victims of the crime will not be reimbursed for their loss if a transfer of assets does occur.
Third, another requirement to secure an order of attachment is to prove that the need to preserve the property outweighs the hardship to any party against whom the order of attachment may operate (CPLR 1312 [3]). There is no evidence presented that the parties will be harmed if the attachment continues to be in effect. The defendants are practicing physicians and have property in this country aside from the seized property. The claiming authority has proved that the need to preserve the attached property outweighs any hardship to defendants.
Finally, the claiming authority must also prove that the property seized is in fact the proceeds of a crime and/or the instrumentality of a crime (CPLR 1310 [1], [2]; 1311 [1] [a]). In order to accomplish this, the claiming authority has, by way of affidavits, proved that the property located at 630 Ocean Avenue, apartment P-4, Brooklyn, New York, is the instrumentality of the crime of scheme to defraud in the first degree and was used in furtherance of that scheme.
Notwithstanding, the claiming authority has not proved that the bank accounts seized by her are the "[proceeds of [the alleged] crime” (CPLR 1310 [2]).
Initially, the claiming authority requested, as part of the attachment, the seizure of $320,800. She had been advised by Ms. Diaz, who was defendants’ receptionist, that the term *985 "D&C” in the 1985 account book was used to indicate that an abortion procedure had been performed.
The Assistant District Attorney then selected six days which appeared "ordinary” in terms of the volume of patients and services rendered by defendants. She added up the number of "D&C’s” listed in the book and came to a determination that the average amount earned from abortion procedures was $1,753. Therefore, in a six-day week the defendants earned an average of $10,518 from abortion procedures. In the 30 V^-week period beginning from August 1, 1984, the date the forfeiture statute became effective, to the date of defendants’ arrest on March 6, 1985, defendants earned $320,800 from abortion procedures.
After reviewing her figures and the account book, the claiming authority altered her initial calculation. She reasoned that between August 1, 1984 and March 6, 1985, defendants were visited by 3,348 patients; that 1,651 of those patients underwent abortion procedures after having been told by defendants or their agents that they were pregnant. Defendants charged between $150 and $1,500 for these abortion procedures. When defendants’ records did not reflect the amount charged 133 patients, the claiming authority deduced that as the average price for an abortion was $153, it was the amount "deemed charged to these 133 patients”. The claiming authority, by this guesswork, concluded that the proceeds of the defendants’ alleged criminal activity totaled $273,302.
The claiming authority’s attempt to arrive at an accurate figure as to the proceeds of the criminal activity has fallen short of the rule in CPLR 1311 (8), which states, in effect, that the total amount that may be recovered by the claiming authority against all criminal defendants in a forfeiture proceeding "shall not exceed the value of the proceeds of the crime or substituted proceeds of the crime, whichever amount is greater, and, in addition, the value of any forfeited instrumentality used in the crime”. The claiming authority may, in a motion to vacate or modify an attachment order be given by the court "a reasonable opportunity to correct any defect” (CPLR 1329 [1]).
Therefore, in order for this court to ascertain whether the claiming authority has met her burden of showing that the seized bank accounts totaling $273,302 are in fact the proceeds of the alleged crime, a hearing must be held at which time the claiming authority will be given the opportunity of proving *986 her allegations, not by surmise, but by concrete evidence (see, Matter of Sabatino, 59 AD2d 992).
In summary, the claiming authority has met her burden of proof that "she will succeed on the merits” except as to the levy on the bank accounts (CPLR 1329 [2]).
The motion to confirm the order of attachment is granted to the extent of the property levied at 630 Ocean Avenue, Brooklyn, New York, apartment P-4. A hearing is ordered to determine whether the attachment should be vacated as to the bank accounts seized, or any part thereof. The defendants’ motion to vacate the attachment is denied pending the outcome of the hearing, and the attachment of the bank accounts is continued.

. Exodus 21:28 which is oft cited as being the origin of modern-day forfeiture. The Biblical passage states that: "[i]f an ox gore a man or a woman, that they die: then the ox shall be surely stoned, and his flesh shall not be eaten: but the owner of the ox shall be quit.” The ox was considered the guilty object, not the owner, and was therefore subject to forfeiture (Comment, Criminal Forfeiture: Attacking the Economic Dimension of Organized Narcotics Trafficking, 32 Am U L Rev 227, 232).

. The courts are not without authority, aside from the forfeiture statute, to grant restitution to victims of a crime. For example, Penal Law § 65.10 (2) (g) permits restitution as part of a sentence of probation or conditional discharge.

. Subsequent to the granting of the ex-parte order of attachment the claiming authority recalculated defendants’ gain from the alleged criminal activity to be $273,302 instead of $320,800.