Keith **ASDOURIAN, and Blue Chip Mortgage Corp., Plaintiffs,**

v.

Gary **KONSTANTIN, Rahim Ali, John Murphy, Sr., Reliance Mortgage Corp., Teri Gungor, The Hip Hop Café, United Companies Lending Corp., Harold Pierre, Salvatore Cariola, Ruthven Prithwie, Harvey Glaser, Adi Okeon, Augusto Jalon, Michael Funding, LLC, Linda Funding, LLC, Benjamin Funding, LLC, Reliance Mortgage Banking Corp., Michael Harris, Michael Harris Consulting Inc., and Alliance Mortgage Corp., Defendants.**

No. CV–98–7659 (ADS).

United States District Court,
E.D. New York.

May 17, 1999.

Sam P. Israel, P.C., New York City, by Emilie Bakal, of counsel, for the plaintiffs.

Ryan & Brennan LLP, Floral Park, N.Y., by James E. Ryan, John Brennan, of counsel, for the defendants Gary Konstantin, Reliance Mortgage Corp., Reliance Management Corp., Reliance Mortgage Banking Corp., and the Hip Hop Cafe.

Winick & Rich, P.C., New York City, by Joseph E. Field, Scott Wyner, of counsel, for the defendants Michael Funding, LLC, Linda Funding, LLC and Benjamin Funding, LLC.

Certilman Balin Adler & Hyman LLP, The Financial Center at Mitchel Field, East Meadow, NY, by Candice Gladston, Patrick McCormick, of counsel, for the defendants John Murphy and Alliance.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court is the plaintiffs' Order to Show Cause seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining defendants Gary Konstantin ("Konstantin"), Rahim Ali ("Ali"), Reliance Mortgage Corp., Reliance Mortgage Banking Corp. (collectively, "Reliance"), The Hip Hop Café, Augusto Jalon ("Jalon"), Linda Funding LLC, Michael Funding LLC, and Benjamin Funding LLC from selling, transferring or otherwise disposing of any interest in the following property:

(1) A parcel of land located at 705 East Passyunk Ave., Philadelphia, PA (the "Hip Hop Café);"

(2) A parcel of land located at 69 Montauk Highway, Copiague, N.Y. 11752;

(3) Residential property located at 529 Queen Street, Philadelphia, PA;

(4) Real property located at 881 Cedar Swamp Road, Brookville, NY;

(5) Real property located at 95 Riviera Drive, Massapequa, N.Y. (properly should be 75 Riviera Drive South, Massapequa, NY);

(6) Real property located at 1886 Schenectady Avenue, Brooklyn, NY;

(7) Real property located at 517 Decatur Street, Uniondale, NY;

(8) Real property located at 111–60 Lefferts Blvd., Ozone Park, NY;

(9) Personal property including one 1997 BMW 740IL and a 1998 Lincoln Nav-

igator, which are both registered to defendant Konstantin;

(10) Personal property including a 1995 Chevrolet Impala, 1998 Lincoln Navigator, and a 1998 BMW, all of which are registered to defendant Ali; and

(11) Any other real or personal property purchased in whole or in part with funds belonging to one or both of the Plaintiffs.

## I. BACKGROUND

The following facts are taken from the plaintiffs' amended complaint, filed on December 20, 1998. The plaintiffs allege that in early 1996, defendants Konstantin, Okeon, Prithwie, and Ali (the "Konstantin Group") approached Blue Chip, a mortgage banker licensed with the New York State Department of Banking, and its principal Asdourian, regarding a joint venture in the mortgage service industry. Konstantin advised Asdourian that he had heard that Asdourian had just received his banking license and that he, with his substantial experience in this particular area could help get his business off the ground in a manner in which it would otherwise take Blue Chip years to achieve. Apparently, the Konstantin Group represented that it would help Blue Chip generate substantial revenues.

Based on these representations, Blue Chip and the Konstantin Group entered into a joint venture agreement dated July, 1996, in which they agreed to join forces and pursuant to which, Konstantin was named Chief Executive Officer of Blue Chip and added as a signatory to Blue Chip's bank accounts and warehouse lines. The plaintiffs allege that in October, 1997 they discovered substantial withdrawals for personal use by the Konstantin Group of Blue Chip funds, including the use of money to purchase properties in Pennsylvania. Upon learning of this, Asdourian removed Konstantin as a signatory of the Blue Chip bank accounts.

The plaintiffs allege that when Asdourian confronted Konstantin with this, he became enraged and threatened to kill him. In addition, Konstantin revealed that he had a criminal record and had been arrested for insurance fraud in the past. Despite this threat, the plaintiffs unwisely agreed to reinstate Konstantin as signatory to the bank account. Thereafter, the plaintiffs allege that the Konstantin Group falsified documents such as tax returns, and employment and bank verifications for mortgage applicants to make such applicants far more credit worthy than they actually were, thereby generating funds for its own benefits. In addition, the plaintiffs contend that Blue Chip sold loans to another company for $100,000, far below the loans' fair market value.

Despite this activity by the Konstantin Group, the plaintiffs continued to work with them in order to rectify problems such as a number of banks who requested that Blue Chip buy-back the mortgages that they were sold due to irregularities. In April, 1998 Blue Chip's offices in Westbury were burglarized. The plaintiffs allege "upon information and belief" that the Konstantin Group orchestrated this break in to recover records that would have exposed their unlawful conduct regarding the buy-back loans. Approximately 1½ years after learning of Konstantin's unscrupulous conduct, in May, 1998 Asdourian finally moved out of Blue Chip's Westbury offices. In another surprising move, Asdourian made an agreement to sell Blue Chip to the Konstantin Group. Some time later, Asdourian learned that the Konstantin Group had purchased multiple parcels of land in New York and Pennsylvania with Blue Chip funds. Some of this property is the subject of the present motion. As a result of this conduct, the plaintiffs filed a twelve count complaint alleging violations of RICO, conversion, indemnification, breaches of fiduciary duties, common law fraud, breach of contract, and fraudulent conveyances.

With regard to the property located in Philadelphia, it appears that Michael Funding LLC, Linda Funding LLC, and

Benjamin Funding LLC (the "Lender Defendants") simply loaned money to defendant Reliance and are now bona fide mortgagees. As two of the loans are now in default, Linda Funding and Benjamin Funding have commenced foreclosure actions to seek recovery of the unpaid balance due on their loans. There are no allegations that the Lender Defendants participated or had knowledge of any of the alleged criminal or fraudulent activity committed by the Konstantin Group. In fact, Konstantin admits in his affidavit that the two pieces of property located in Philadelphia are the subject of foreclosure proceedings.

As for the other property in question, Konstantin states that the property located in Copiague is owned by an entity that is not a party to the litigation; the property in Brookville will be his family residence once construction is complete; the property in Uniondale was sold to a third party two years ago; the property in Ozone Park was sold two months ago; the 1997 BMW was repossessed; the 1998 Lincoln Navigator is the vehicle used by his wife, and as to all of the other property he has no knowledge with regard to who owns it.

## II. DISCUSSION

### A. *Preliminary Injunction:* The Standard

"An award of an injunction is not something a plaintiff is entitled to as a matter of right, but rather it is an equitable remedy issued by a trial court, within the broad bounds of its discretion, after it weights the potential benefits and harm to be incurred by the parties from the granting or denying of such relief." *Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 1999 WL 222965, *4 (2d Cir. March 31, 1999) (citing *Yakus v. United States,* 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 [1944] ).

■ A preliminary injunction is considered an "extraordinary" remedy that should not be granted as a routine matter. *See JSG Trading Corp. v. Tray–Wrap,*

*Inc.,* 917 F.2d 75, 80 (2d Cir.1990); *Hanson Trust PLC v ML SCM Acquisition, Inc.,* 781 F.2d 264, 273 (2d Cir.1986) (preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"); *Medical Soc'y of the State of New York v. Toia,* 560 F.2d 535, 538 (2d Cir. 1977) (preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted"); *Wandyful Stadium, Inc. v. Town of Hempstead,* 959 F.Supp. 585, 591 (E.D.N.Y.1997) (accord). "An injunction should be granted when the intervention of a court of equity is essential to protect a party's property rights against injuries that would otherwise be irremediable." *Ticor Title,* 173 F.3d 63, 68. Ultimately, the decision to grant or deny this "drastic" remedy rests in the district court's sound discretion. *See American Exp. Financial Advisors Inc. v. Thorley,* 147 F.3d 229, 231 (2d Cir.1998); *Molloy v. Metropolitan Transp. Auth.,* 94 F.3d 808, 811 (2d Cir.1996).

■ "The general standard for issuing a preliminary injunction requires that the movant show '(1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations,* 107 F.3d 979, 984 (2d. Cir.1997) (quoting *International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 70 [2d Cir.1996] [quoting in turn *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 [2d Cir.1979]] ); *NAACP v. Town of East Haven,* 70 F.3d 219, 223 (2d Cir.1995) (quoting *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 [2d Cir. 1991] ). In addition, Fed.R.Civ.P. 52(a) requires that the district court sufficiently set forth its findings to permit appellate review. *See Rosen v. Siegel,* 106 F.3d 28, 32 (2d Cir.1997); *Society for Good Will to*

*Retarded Children, Inc. v. Cuomo,* 902 F.2d 1085, 1088 (2d Cir.1990).

### 1. The Standard Applied

With respect to the request for a preliminary injunction, the plaintiffs argue that a preliminary injunction is appropriate because they will suffer irreparable harm if the Court does not enjoin the transfer of the various assets listed above. In support of this contention, the plaintiffs submit that "these properties will be, in all likelihood, the only assets in the name of these defendants which can be used to fulfill a monetary judgment in Plaintiff's favor...." The basis for this conclusion is that: (1) "Konstantin has a previous arrest for insurance fraud and is the subject of a criminal investigation in Suffolk County arising from his activities at Blue Chip;" (2) "Konstantin, Ali and others are also defendants in an action in New Jersey for wrongful acts similar to those alleged in this case;" (3) "Plaintiffs have overwhelming evidence ... that these defendants converted Blue Chip's funds to their own use; have used Blue Chip's funds to purchase and/or renovate certain properties for their own benefit; intend to imminently transfer their interests to others, and have forged Blue Chip business records;" (4) "Konstantin has already sold or is on the process of selling his interest in the Philadelphia property that was purchased, in part, with Blue Chip funds;" (5) "on March 3, 1999 a foreclosure action was filed against defendants Reliance Mortgage regarding property at 705 East Passyunk Ave; and (6) 'plaintiffs have been advised by the Suffolk County Detectives that property at 881 Cedar Swamp Road, Brookville, which has undergone substantial renovations at Blue Chip's expense, is on the market and about to be sold.'"

■ The Court is not persuaded that the plaintiffs have sufficiently demonstrated that they would suffer irreparable harm if the Court denies their request for an injunction. It is well settled that, "when a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary remedy of a preliminary injunction should be granted." *Borey v. National Union Fire Ins. Co.,* 934 F.2d 30, 34 (2d Cir.1991). Even if the defendants were to liquidate the assets that are the subject of this motion, there is no proof that they would be unable to satisfy any future monetary judgments.

In addition, the Court notes that a period of approximately four months have transpired since the filing of the complaint, thus undermining the plaintiffs' claim of irreparable harm. The Second Circuit has stated that "Delay ... tends to indicate at least a reduced need for such drastic, speedy action.... Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate the absence of the kind of irreparable harm required to support a preliminary injunction." *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985). Accordingly, based on the record, the Court finds that the plaintiffs have failed to demonstrate that they would suffer irreparable harm if the Court denies their motion for a preliminary injunction.

■ Even if the plaintiffs had demonstrated irreparable harm, in the Court's view, they have failed to demonstrate a likelihood of success on the merits or a sufficiently serious question going to the merits to make it a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Many of the allegations in the plaintiffs amended complaint are based upon hearsay, surmise, and conjecture. The amended complaint itself presents many interesting question such as why Asdourian continued his business relationship with the Konstantin Group despite his admitted knowledge that they were committing criminal acts and purchasing property from the funds of Blue Chip. Moreover, Konstantin, in his affidavit vehemently denies the allegations set forth in the plaintiffs' amended complaint.

In this regard, the Court notes that defendant Konstantin has annexed to his affidavit in opposition a letter from the President of the Plaintiff Blue Chip Mortgage Corporation dated June 3, 1998, to the Blue Chip accountants, which states, in part, the following:

4. There have been no:

a. Irregularities involving management or employees who have significant roles in the system of internal accounting control.

b. Irregularities involving other employees that could have a material effect on the financial statements.

\* \* \* \* \* \*

5. We have no plans or intentions that may materially affect the carrying values or classification of assets and liabilities.

6. The following have been properly recorded or disclosed in the financial statements:

a. Related party transactions and related amounts receivable or payable, including sales, purchases, loans, transfers, leasing arrangements and guarantees.

During the year Keith Asdourian, president and sole stockholder, received $166,163 of salary and Gary Konstantin, CEO and treasurer, received $259,276 of salary.

At the balance sheet date, Keith Asdourian owed the company $3,501.

q. During the year, Gary Konstantin, an officer of the Company, borrowed $59,286 which included cash and payments of various personal expenses. Interest of $1,764 was charged on these loans. The loans and interest were paid-off by offsetting the balance due to Reliance Mortgage Bankers which is owned by Gary Konstantin. As of September 30, 1997, the Company did not owe any money to Reliance Mortgage Bankers, nor did Reliance owe any money to Blue Chip. Mr. Konstantin's debt of $23,000 due to Bellettieri, which was to be paid back by the Company was forgiven.

\* \* \* \* \* \*

7. There are no:

a. Violations or possible violations of laws or restrictions whose effects should be considered for disclosure in the financial statements or as a basis for recoding a loss contingency.

b. Other material liabilities or loss contingencies that are required to be accrued or disclosed by Statement of Financial Accounting Standards No. 5.

\* \* \* \* \* \*

8. There are no unasserted claims or assessments that our lawyer has advised us are probable of assertion and must be disclosed in accordance with Statement of Financial Accounting Standards No. 5, nor other contingencies.

\* \* \* \* \* \*

9. There are no material transactions that have not been properly recorded in the accounting records underlying the financial statements, and with the possible exception of immaterial obligations for which invoices had not been received and which otherwise could not readily be determined or estimated, all liabilities of the Company as of September 30, 1997 are recorded as such in the accounts.

\* \* \* \* \* \*

13. There are no material commitments, negotiations or agreements made or being entered into nor have any material events or transactions occurred since September 30, 1997 which required disclosure on the financial statements.

\* \* \* \* \* \*

15. We have complied with all aspects of contractual agreements that would have material effect on the financial statements in the event of non-compliance.

16. Travel, entertainment and other section 274 expenses are bona-fide expenses of the Company and have been

or will be properly documented as required by the Internal Revenue Service regulations.

17. No events have occurred subsequent to the balance sheet date that would require adjustment to, or disclosure in, the financial statements.

While the plaintiffs argue that the Konstantin is under investigation by the Suffolk County District Attorney's Office, and that they have proof of fraudulent activity including withdrawals of Blue Chip checks by Konstantin for his personal use, the Court is of the view that at this stage in the litigation, these are only allegations that are refuted by the defendants, and are most appropriately resolved not by the Court issuing a preliminary injunction, but by directing that a trial in this matter promptly occurs.

In addition, to the extent the plaintiffs motion for a preliminary injunction seeks to enjoin the Lender Defendants from selling, transferring or otherwise disposing of their interest in two properties located in Philadelphia, Pennsylvania, the Court notes that the Amended Complaint does not allege that the Lender Defendants participated in or knew of the alleged fraudulent conduct committed by the Konstantin Group. It appears that the Lender Defendants loaned money to defendant Reliance Mortgage Corp., in exchange for security interests in property located in Philadelphia and are now foreclosing on two pieces of property. In fact, as a bona fide mortgagee, it would be inequitable if the Court were to prevent the Lender Defendants from foreclosing on the Philadelphia property after Reliance defaulted on two separate loans.

Accordingly, as to all the defendants, the plaintiffs have not demonstrated either a likelihood of success on the merits; or a sufficiently serious question going to the merits to make it a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

Therefore, the Court denies the plaintiffs request for a preliminary injunction.

**B.** *Attachment:* The Standard

In order to determine whether the plaintiffs are entitled to an order of attachment, the Court must turn to New York law since Fed.R.Civ.P. 64 specifically defers to state law for the procedures governing attachment. In New York, an attachment may be ordered by the Court if the plaintiff is seeking a money judgment and at least one of the following grounds exists: (1) the defendant is a nondomiciliary residing outside of New York State or is a foreign corporation not authorized to do business in this state; or (2) the defendant resides or is domiciled in New York State and cannot be personally served despite diligent efforts to do so; or (3) the defendant, with the intent to defraud creditors or frustrate the enforcement of a money judgment that might be rendered in the plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from this state or is about to do so; (4) the action is brought by the victim or the representative of the victim of a crime, against the person, the legal representative, or assignee of the person convicted as a result of such crime; or (5) the cause of action is based on full faith to enforce a judgment of another court (N.Y.Civ.Prac.L. & R. ["CPLR"] 6201).

In addition, CPLR 6212(a) requires the plaintiff to show by affidavit that: (1) there exists a cause of action; (2) it is probable that the plaintiff will succeed on the merits; (3) one or more of the above grounds for attachment provided in CPLR 6201 exist; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff (*see also Ford Motor Credit Co. v. Hickey Ford Sales, Inc.*, 62 N.Y.2d 291, 465 N.E.2d 330, 476 N.Y.S.2d 791 [1984] ). The burden is on the moving party to establish the grounds for the attachment. *Graubard Mollen Dannett & Horowitz v. Kostantinides*, 709 F.Supp. 1123, 1132 (S.D.N.Y.1989).

Even if the plaintiff satisfies the statutory requirements of CPLR 6201 and 6212(a), the provisional remedy of an attachment remains a discretionary one (*see Merrill Lynch Futures Inc. v. Kelly*, 585 F.Supp. 1245, 1259 [S.D.N.Y.1984]). "[S]ince attachment is an extraordinary remedy created by statute in derogation of the common law, the provision should be strictly construed in favor of those against whom it is employed." (*Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 332 [2d Cir.1983], citing *Siegel v. Northern Boulevard & 80th St. Corp.*, 31 A.D.2d 182, 183, 295 N.Y.S.2d 804, 806 [1st Dep't 1968]).

### 1. The Standard Applied

It should be noted at the outset, and all parties agree, that the Philadelphia property is not subject to attachment under the New York CPLR provisions.

The Court has already determined, in the context of the plaintiffs' motion for a preliminary injunction, that there has not been an adequate showing of a likelihood of success on the merits. Thus, the plaintiffs are unable to satisfy the provisions of CPLR 6212(a) which require that the plaintiffs demonstrate that it is probable that they will succeed on their merits of their complaint. In addition, while the plaintiffs rely on CPLR 6201(3), they have not adequately demonstrated that the defendants, with the intent to defraud creditors or frustrate the enforcement of a money judgment that might be rendered in the plaintiffs favor, have assigned, disposed of, encumbered or secreted property, or removed it from this state or are about to do so. Much of the plaintiffs proof is based upon "information and belief" and does not satisfactorily demonstrate that the defendants are about to frustrate the possibility of a money judgment. In fact, Konstantin specifically denies the allegations set forth by the plaintiffs. At this early stage in the litigation, without clear proof of an objective to defraud, the Court will not impose the draconian remedy of attachment. However, the Court will order that discovery be completed on an expedited basis and that the case be set down for an early trial.

## III. CONCLUSION

Having reviewed the parties' submissions and afforded them the opportunity to present oral argument, and for the reasons set forth above, it is hereby

**ORDERED,** that the plaintiffs' motion for a preliminary injunction enjoining the selling, transferring, or disposing of certain property is **DENIED;** and it is further

**ORDERED,** that the plaintiffs' motion for an order of attachment is **DENIED;** and it is further

**ORDERED,** that the parties' are directed to proceed to discovery on an expedited basis and this case is set down for jury selection on September 27, 1999 at 9:00 AM.

**SO ORDERED.**