**CARGILL INVESTOR SERVICES, INC., Plaintiff,**

v.

**Frances COOPERSTEIN, Leonard Cooperstein, Em & El Ring Co., Inc., and Lee Lee Coins, Inc., Defendants.**

No. 83 Civ. 8545 (RWS).

United States District Court, S.D. New York.

May 15, 1984.

---

**2.** It is axiomatic that courts will construe exculpatory clauses very strictly.

Jacob, Medinger & Finnegan, New York City, for plaintiff; Peter J. McKenna, Elizabeth T. Marren, New York City, of counsel.

Barry J. Yellen, New York City, for defendants.

## OPINION

SWEET, District Judge.

Defendants Frances Cooperstein ("Frances"), Leonard Cooperstein ("Leonard"), Em & El Ring Co., Inc. ("Ring"), and Lee Lee Coins, Inc. ("Coins") have moved in this diversity action under Rule 12(b) and Rule 56, Fed.R.Civ.P., to dismiss the complaint of Cargill Investor Services, Inc. ("Cargill"). For the reasons stated below, the motion is granted with leave to replead within twenty (20) days.

According to the complaint, in April 1982 Cargill opened a trading account for R.B. Jewelers Co., Inc. ("Jewelers"), a corporation with the same officers, directors and employees as Ring and Coins, and doing the same business at the same place. According to the complaint, the account was opened by both Frances and Leonard, although only Frances signed the Cargill forms submitted in connection with the opening of the account. The Cargill salesman who obtained the account indicated a capitalization for Jewelers of $100,000, a net worth of $250,000 and annual income of $100,000, but there is no direct evidence as to the source of these representations.

The complaint then alleges that, in August 1982, Frances and Leonard "through Jewelers" directed short sales of gold futures and when payment was demanded, it was refused and Cargill suffered losses of $75,258.50 upon liquidation of the position. It is further alleged that thereafter Frances and Leonard "ceased operating their business through Jewelers and closed out the bank account they had maintained in the name of Jewelers by removing funds from such account for their own personal or business purposes." On this basis, Cargill alleges in the complaint's first cause of action that defendants are liable to it as alter egos of Jewelers.

In the second cause of action, Cargill alleges that "Jewelers was either inadequately capitalized by defendants FC and LC for the trading activity engaged in with the plaintiff or the available capital and other assets of Jewelers were improperly removed ...."

The third cause of action alleges that, in November 1982, Cargill obtained a default judgment against Jewelers and that defendants are liable for the amount of the judgment.

It would be hard, as well as unseemly, to quarrel with the opinion of our Circuit conveyed with the eloquence of the Honorable H. Hughes Mulligan in *Brunswick Corp. v. Waxman*, 599 F.2d 34, 35–36 (2d Cir.1979):

Although we are persuaded that the district judge reached the proper result here in dismissing the complaint, we cannot subscribe entirely to his views on the law of New York in the field of "piercing the corporate veil" and the disregard of the corporate fiction. New York law in

this area is hardly as clear as a mountain lake in springtime. Since Professor Wormser's initial discussion of the topic in Piercing the Veil of Corporate Entity, 12 Colum.L.Rev. 496 (1912), there have been scores of articles and hundreds of cases discussing the problem, advancing and espousing various theories. See Cary, Corporations 109–49 (4th ed. 1969) [hereinafter cited as "Cary"]. In particular we are dubious that, as suggested by the district court, the plaintiff need establish that the Waxmans committed a fraud on Brunswick and that there be a causal connection between the fact that the Waxmans conducted business individually and the contract losses suffered by Brunswick. *See, e.g., Port Chester Electrical Construction Corp. v. Atlas*, 40 N.Y.2d 652, 656–57, 389 N.Y.S.2d 327, 330–31, 357 N.E.2d 983, 986–87 (1976); *Walkovszky v. Carlton*, 18 N.Y.2d 414, 421, 276 N.Y.S.2d 585, 590–91, 223 N.E.2d 6, 10 (1966). We are rather inclined to agree with Professor Cary that "[n]o concept of separate corporate personality will suffice to solve an actual problem." Cary, *supra*, at 110. "What the formula comes down to, once shorn of verbiage about control, instrumentality, agency and corporate entity, is that liability is imposed to reach an equitable result." Latty, Subsidiaries and Affiliated Corporations 191 (1936).

Eschewing conceptualism in this diversity case, where isolated rules in a variety of cases require a factual analysis of each, we believe that Judge Bartels' finding of fact which are supported by the transcript dictate the result reached.

Regrettably, of course, what is presently before the court is a pleading which states little more than that in equity the corporate veil of Jewelers should be pierced. In order for the defendants to frame an answer more is required, and the muddy waters of the alter ego conceptualism must be structured more than has been done here.

The Honorable Henry F. Werker put it as follows in *Establissement Tomis v.*

*Shearson Hayden Stone, Inc.*, 459 F.Supp. 1355, 1365 (S.D.N.Y.1978).

In determining whether the Spiegels are Tomis' alter egos, numerous factors must be evaluated by the court. They include gross undercapitalization of the subject corporation, disregard of corporate formalities, corporate insolvency at the time in question, lack of corporate records, non-payment of dividends, siphoning of corporate funds by the dominant shareholder, non-function of directors and officers, and an inquiry as to whether the stockholders used the corporation merely as a facade for their own operations. *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685–87 (4th Cir.1976). *See also* 1 Fletcher, Cyc. Corp., § 41.1 (Perm.ed.). Courts will pierce the corporate veil reluctantly due to a presumption of corporate regularity. *Pardo v. Wilson Line of Washington, Inc.*, 134 U.S.App.D.C. 249, 253–254, 414 F.2d 1145, 1149–50 (1969), and the party contending that the corporate entity should be disregarded carries the burden of establishing a basis for so doing. *Id.; DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d at 683.

In *Award Petroleum, Inc. v. Vantage Petroleum Corp.*, 529 F.Supp. 269, 271 (E.D.N.Y.1981), it was stated that personal liability may be imposed on a sole owner of a corporation who uses it only as a vehicle of convenience for transactions which are in fact personal.

These authorities are all derivative, presumably, from the unclear New York authorities, such as *Bartle v. Home Owners Cooperative*, 309 N.Y. 103, 127 N.E.2d 832 (1955) and *Port Chester Electrical Construction Corp. v. Atlas*, 40 N.Y.2d 652, 389 N.Y.S.2d 327, 331, 357 N.E.2d 983, 986 (1976), which require illegality, fraud, misrepresentation or use of the corporation for transaction of a shareholder's personal business, in order to overcome the separate nature of the corporate form.

 The complaint does not allege a statutory violation or a knowing misrepre-

sentation upon which Cargill relied, nor any circumstances amounting to fraud under the cited authorities. "Removal of funds for personal or business purposes" does not adequately allege grounds for the disregarding of the corporate form. Inadequate capitalization and improper removal of funds (Count II) and the entry of a default judgment (Count III) fail to state adequate grounds to deprive Jewelers of its corporate identity and impose liability on the defendants.

The complaint is dismissed with leave to replead within twenty (20) days.

**IT IS SO ORDERED.**