COMPUTER STRATEGIES, INC., et al., Respondents-Appellants, v COMMODORE BUSINESS MACHINES, INC., Appellant-Respondent. (Action No. 1.)

COMMODORE BUSINESS MACHINES, INC., Appellant-Respondent, v COMPUTER STRATEGIES, INC., Respondent-Appellant. (Action No. 2.)

Second Department, December 24, 1984

**APPEARANCES OF COUNSEL**

*Eisner & Levy* (*Roy G. Levy* of counsel), for appellant-respondent.

*Lexow & Berbit* (*Harvey L. Greenberg* and *Warren E. Berbit* of counsel; *Roy E. Greenberg* on the brief), for respondents-appellants.

**OPINION OF THE COURT**

*Per Curiam.*

These appeals, taken from four separate orders, require us to unravel a complex commercial transaction involving several separate, albeit interrelated, agreements. While we find that Special Term properly denied a motion to confirm an attachment, the other orders, which decided motions for summary judgment and other relief, must be modified in the manner set forth herein.

I

Commodore Business Machines, Inc. (Commodore), is a manufacturer of microcomputers. The computers are sold on a national basis, both to distributors and directly to retailers. Computer Strategies, Inc. (Computer), has been a dealer of Commodore's products since 1979. The relationship between Commodore and Computer is controlled by two consecutive dealer agreements and related documents. An additional agreement between the parties may also play a role.

In March, 1981, Commodore and Computer entered into a "Flagship Dealer Agreement" whereby Computer agreed to promote and sell Commodore's products. Computer participated in a promotional sales program for educational institutions

whereby Commodore would deliver a free computer to qualified institutions that purchased two other machines at full price. This was known as the "3 for 2" program. In a document executed in August, 1981, entitled "Security Agreement", Computer granted Commodore a broad security interest in its assets in return for a broader line of credit and continuation of the "3 for 2" promotional program.

In February, 1983, the companies entered into an "Authorized Dealer Agreement" which expressly superseded the prior agreement. By its terms this second agreement was to expire on June 30, 1983. The second agreement provided a continued security interest in Computer's inventory and related assets that would extend beyond the expiration date.

Although the "3 for 2" promotion continued through June 30, 1982, Commodore was unable to meet all of the orders received due to a supply shortage. This resulted in lengthy shipping delays. Commodore attempted to ease the shortage by shipping machines with smaller memory capacities and screens in lieu of the promotional machines. The shipments were finally completed in April, 1983. Many schools withheld or delayed payment to Computer in response to these untimely deliveries. Allegedly as a result of this, Computer was unable to pay Commodore and the outstanding balance owed to Commodore grew to approximately $2,300,000. Commodore contends that over $1,200,000 was still in arrears in the summer of 1983.

Beginning in the summer of 1982, Computer periodically protested these developments. In response to the protests and in recognition of the payment difficulties, Commodore extended special credit lines to Computer allowing it to make late payments on its accounts without interest or penalties. Computer, in turn, agreed to continue to promote the "3 for 2" program.

Problems with payments and credit terms persisted as the second agreement neared expiration in June of 1983. Commodore drafted four documents to continue the dealership and to make more definite arrangements concerning credit and payment. These included: (1) a new one-year dealer agreement, identical in form to the second agreement entered into in February, 1983; (2) a supplemental agreement, which, among other things, provided for Computer to pay $150,000 during July and August, 1983 towards its outstanding debt; (3) a judgment note, which provided that Computer would pay $975,000 in nine installments commencing with a payment on August 31, 1983 and ending in April, 1984; and (4) a personal guarantee of

Computer's debt to be signed by Joel Kornreich (Computer's president) and Karyn Kornreich (his wife). Commodore forwarded these four documents, referred to collectively as the proposed "Third Agreement", to Computer in June, 1983.

According to Computer, the parties agreed to modify certain provisions in the "Third Agreement", including deletion of the requirement in the proposed supplemental agreement that Computer pay $150,000 in July and August, 1983, and certain limitations in the guarantee. The guarantee and the remaining documents were executed in their modified form and were returned to Commodore on or about July 22, 1983. While Commodore denies that it agreed to the modifications and insists that they were made unilaterally by Computer, it continued shipping products after expiration of the second agreement and expressed no disapproval of the modifications until late August, 1983.

On August 24, 1983, Commodore informed Computer that it was ceasing product shipments because Computer had been on "credit hold for two weeks". Computer sent a telex on August 26, 1983 protesting these actions and saying it would not make its August 31 payment on the judgment note until Commodore executed and returned the four documents. John Kelly, a vice-president of Commodore, told Computer that Commodore was "not happy" with the agreement and would insist on modifications. The parties agreed to meet on August 31, 1983 to negotiate such modifications.

At the meeting, Kelly presented Joel Kornreich with a letter declaring Computer to be in default under its agreements. It ordered Computer to stop acting as a distributor immediately, to allow Commodore to take possession of collateral on August 31, to make Computer's books available for inspection and to provide Commodore with the names of all its account debtors. Computer protested that it could not be in default since under the "Third Agreement", the first payment on the judgment note was only due that day. Kornreich tendered a check for $50,000 which Kelly refused, saying the "Third Agreement" "did not mean anything". Kornreich then gave Kelly two letters declaring Commodore's actions to be in breach of the agreements but indicating Computer's willingness to continue the relationship.

Computer then commenced this action, *inter alia,* seeking a declaratory judgment that the "Third Agreement" was in full force and effect and that Commodore was the breaching party. The action sought injunctive relief as well as damages for breach of contract and fraud (action No. 1). It obtained a temporary restraining order and sought a preliminary injunction to enjoin

Commodore from refusing to ship products to Computer. The application for a preliminary injunction was denied.

Commodore simultaneously commenced a separate action to recover for goods delivered, to obtain possession of collateral under the security agreement and to enforce the security interest granted in the second agreement (action No. 2). It obtained an ex parte order of attachment on September 2, 1983, ordering the Sheriff to levy against the assets of Computer. Computer cross-moved to vacate the attachment order. Special Term granted the cross motion and vacated the order of attachment in an order entered October 24, 1983.

Computer made a motion to dismiss Commodore's complaint. Commodore cross-moved for consolidation of the two cases, dismissal of the first nine causes of action in Computer's complaint, and summary judgment on its own complaint. In its order dated December 16, 1983, Special Term denied Computer's motion to dismiss and granted consolidation. The court also dismissed Computer's first two causes of action and granted partial summary judgment to Commodore for $975,000, the amount of the judgment note. All other requests for relief were denied. Computer moved to reargue and renew those branches of the cross motion which was granted by order entered February 17, 1984 and, upon renewal and reargument, Special Term modified that order to the extent of staying Commodore from entering or executing judgment for $975,000.

On or about February 10, 1984, Computer served an answer to Commodore's complaint. It contained 12 affirmative defenses and counterclaims. The first 10 affirmative defenses and counterclaims simply correspond to the first 10 causes of action set forth in its original complaint. The eleventh and twelfth affirmative defenses and counterclaims assert a breach of contract by Commodore under the first two agreements and ask for damages therefor.

Commodore then moved, *inter alia,* for partial summary judgment to enable it to exercise its security interest by taking possession of Computer's assets, and for an extension of time to answer Computer's complaint. Commodore also sought dismissal of the eleventh and twelfth affirmative defenses and counterclaims dealing with breach of contract. By order dated April 9, 1984, Special Term granted this relief.

## II

### A. ATTACHMENT

On an application to confirm an order of attachment, a plaintiff must show probable success on the merits, the existence of

one or more grounds for attachment provided in CPLR 6201, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff (CPLR 6212, subd [a]).

Commodore asserts under CPLR 6201 (subd 3) that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts". Specifically, it alleges that Computer was removing inventory from its warehouse in order to keep it out of Commodore's reach.

■ This allegation, however, is devoid of evidentiary support. The fact that the affidavits in support of an attachment contain allegations raising a suspicion of an intent to defraud is not enough. It must appear that such fraudulent intent really existed in the defendant's mind (*Eaton Factors Co. v Double Eagle Corp.*, 17 AD2d 135). Furthermore, the mere removal or assignment or other disposition of property is not grounds for attachment (*Laco X-Ray Systems v Fingerhut,* 88 AD2d 425, app dsmd 58 NY2d 826).

Commodore has also failed to demonstrate a probability of success on the merits of its claim (CPLR 6212, subd [a]; *Republic of Italy v De Angelis,* 206 F2d 121; *National Bank & Trust Co. v J.L.M. Int.,* 421 F Supp 1269). The Court of Appeals has held that a buyer may defeat or diminish a seller's substantive action for goods sold and delivered by interposing a valid counterclaim for breach of the underlying sales agreement (*Created Gemstones v Union Carbide Corp.,* 47 NY2d 250). A meritorious counterclaim exists in this case.

In sum, the order of attachment was properly vacated.

B. CONSOLIDATION OF ACTIONS

■ We need not tarry on the question of the propriety of consolidation. The actions involve common questions of law and fact. Consolidation is, therefore, appropriate " '[a]bsent a showing of prejudice to a substantial right' " (*Eagle Pet Serv. Co. v Pacific Employers Ins. Co.,* 102 AD2d 810, quoting *Del Bello v Wilmot,* 59 AD2d 1023; see CPLR 602, subd [a]).

The bare allegations of prejudice submitted in opposition to the motion to consolidate and on the motion to reargue and renew are insufficient to establish such prejudice (*Mascioni v Consolidated R.R. Corp.,* 94 AD2d 738; *Cantamessa v Greenburg Cent. School Dist. No. 7,* 79 AD2d 670). We decline to overturn the sound exercise of discretion by Special Term.

### C. CONTINUED VALIDITY OF SECURITY INTERESTS AND SECURITY AGREEMENT

■ Dismissal of the first two causes of action in Computer's complaint was also proper. These claims were based on the premise that Commodore's security interests and the "Security Agreement" were no longer effective. Review of the record indicates, however, that Commodore's "Security Agreement" and its security interests were independent of the first agreement and expressly survived the termination of the second agreement. In fact, the "Security Agreement" and security interests had no time limitation. Termination of the prior agreements, therefore, does not affect the "Security Agreement" nor the security interests.

### D. COMMODORE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

■ We have concluded, however, that Special Term erred in granting Commodore's motion for partial summary judgment in the amount of $975,000 on the theory that Computer defaulted in its payment obligations.

The only basis Commodore asserted on its motion for partial summary judgment was predicated on "the admission implicit in the judgment note". We fail to perceive such an admission in that note. Computer admitted that it owed $975,000, but not that it was due as of the time the action was commenced. In fact, the note specifically states that most of the money was only "due" thereafter and only $50,000 was due on August 31, 1983. Computer tendered the required payment on August 31, 1983 and it was refused by Commodore. It was at this time Commodore declared Computer to be in default of its obligations. However, since Computer tendered payment before the end of that day, it could not be in default on the judgment note (*Henninger v Clay*, 4 Misc 2d 795).

Computer alleges that Commodore had extended special credit allowing it to make delayed payments on the large outstanding balance and that Computer substantially changed its position thereon. These allegations are supported by evidence which Commodore has failed to overcome. This extension of credit terms constitutes a waiver of the original contractual provisions. Subdivision (5) of section 2-209 of the Uniform Commercial Code permits a retraction of such a waiver if reasonable notice is given that "strict performance will be required" and the retraction is not "unjust in view of a [party's] material change of position in reliance" (cf. *Elmsford Sheet Metal Workers v Shasta Inds.*, 103 AD2d 764). Commodore could not retract the waiver as it did not give Computer reasonable notice or time to alleviate the prejudice created thereby.

It is well established that in order to obtain summary judgment it is necessary that the movant establish his cause of action or defense sufficiently to warrant the court, as a matter of law, in directing judgment in his favor (CPLR 3212; cf. *Zuckerman v City of New York,* 49 NY2d 557; *Ronder & Ronder v Nationwide Abstract Corp.,* 99 AD2d 608). On such a motion, the court is not to determine credibility, but whether there exists a factual issue or if arguably there is a genuine issue of fact (*Capelin Assoc. v Globe Mfg. Corp.,* 34 NY2d 338). Apart from the dubious sufficiency of Commodore's prima facie claim of default, Computer's defense of extended credit terms raises a question of fact for the jury. Thus, partial summary judgment was improperly granted.

E. VALIDITY OF COMPUTER'S CAUSES OF ACTION

■ The third, sixth, seventh and eighth causes of action in Computer's complaint are based in part on the premise that the third agreement was in effect. Special Term was correct in declining to dismiss these causes of action as several questions exist that cannot be resolved at this stage of the litigation.

The modifications made by Computer do not necessarily constitute a rejection and counteroffer (cf. *Matter of McManus,* 83 AD2d 556; *CBS, Inc. v Auburn Plastics,* 67 AD2d 811). Subdivision (1) of section 2-207 of the Uniform Commercial Code provides that "[a] definite and seasonable expression of acceptance * * * operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms" (see, generally, Construction and Effect of UCC Art 2, Dealing With Sales, Ann., 17 ALR3d 1010, § 9; White & Summers, Uniform Commercial Code [2d ed], § 1-2).*

In this case, Computer modified the supplemental agreement to provide that acceptance was made contingent upon Commodore returning an agreement between it and CSI Distributors, Inc. (a separate company from Computer). Whether this contingency required Commodore's "assent to the additional or different terms" is a question of fact (cf. *Ebasco Servs. v Pennsylvania Power & Light Co.,* 402 F Supp 421, 438-440). Furthermore, an exception to this rule is made if the additional or different terms

---

* The provisions of article 2 of the Uniform Commercial Code are applicable to these distributor agreements, if nothing else, than by reason of the applicability of Pennsylvania law, which the parties agreed would govern these transactions (*Artman v International Harvester Co.,* 355 F Supp 482, 486; *Weilersbacher v Pittsburgh Brewing Co.,* 421 Pa 118).

contained in the "acceptance" materially alter the offer (Uniform Commercial Code, § 2-207, subd [2], par [b]; Ann., 17 ALR3d 1010, *op. cit.*, § 9). Triable issues of fact exist as to whether the modifications made by Computer materially altered the agreement and also as to whether the acceptance was made contingent upon an assent to the additional terms (see *Metro Envelope Corp. v Westvaco*, 72 AD2d 502; *Ebasco Servs. v Pennsylvania Power & Light Co., supra*).

The fourth, fifth and ninth causes of action are all based on Computer's claim that Commodore's delays in shipping caused the increased arrears and therefore excuse its failure to make timely payments.

▪ It is true that shipments were completed in April of 1983 and that Computer's arrearages continued throughout the summer of that year. Nonetheless, it is at least arguable that Computer's arrears were caused by payment delays of the individual schools participating in the "3 for 2" program. Schools affected by the Commodore delivery delays and deprived of their machines were not likely to make prompt payments.

Commodore further asserts that Computer should not be allowed to maintain this defense because it failed to give the timely notice required under section 2-607 of the Uniform Commercial Code. We disagree. The notification need only alert the seller that the transaction is troublesome and does not need to include a claim for damages or threat of future litigation (Uniform Commercial Code, § 2-607, Comment 4; *Lewis v Mobil Oil Corp.*, 438 F2d 500, 509; Sufficiency and Timeliness of Buyer's Notice Under UCC § 2-607 of Seller's Breach of Warranty, Ann., 93 ALR3d 363; Ann., 17 ALR3d 1010, *op. cit.*, § 43). Computer gave sufficient notice of its dissatisfaction through its oral communications and, when the delay grew longer, through letters. The requirements of section 2-607 of the Uniform Commercial Code have been satisfied.

Special Term acted properly, in view of the unresolved questions of fact, in not dismissing the fourth and fifth causes of action. The ninth cause of action which charges Commodore with fraud, however, should be dismissed as it lacks the evidentiary support needed to survive such a motion (cf. *Lanzi v Brooks*, 43 NY2d 778; *Fidenas AG. v Honeywell, Inc.*, 501 F Supp 1029).

### OTHER ISSUES

▪ Computer's eleventh and twelfth counterclaims and affirmative defenses seek damages for breach of the first and second agreements. These counterclaims and affirmative defenses were

dismissed on the premise that separate distribution agreements were involved, and, therefore, Computer could not, under the Uniform Commercial Code, offset damages against Commodore's claims. Such dismissal was premature. It cannot be resolved at this point whether the breaches alleged therein are of the "same" agreements as required by section 2-717 of the Uniform Commercial Code. Even if this right of offset in section 2-717 is not available, it should not be overlooked that one may assert any counterclaim, whether or not related to the claims in the complaint (CPLR 3019, subd [a]; *Getlan v Hofstra Univ.*, 41 AD2d 830, app dsmd 33 NY2d 646).

Summary judgment on the third and fourth causes of action in Commodore's complaint, for possession of certain collateral, is also inappropriate for the same reasons as pertain to the first two causes of action in that complaint. Unless Commodore shows that Computer is in default, and it has not, it may not exercise its rights to possession under its security interests (Uniform Commercial Code, § 9-503; see *MGD Graphic Systems v New York Press Pub. Co.*, 42 NY2d 1018, affg 52 AD2d 815 on memorandum at App Div).

Finally, Special Term was within its discretion to extend Commodore's time to answer (CPLR 2004).

### CONCLUSION

For these reasons, Commodore is not entitled to summary judgment on any of its causes of action. Computer's ninth cause of action for fraud should be dismissed and its eleventh and twelfth affirmative defenses and counterclaims should be reinstated. The orders appealed from should in all other respects be affirmed insofar as appealed from.

TITONE, J. P., BRACKEN, BOYERS and LAWRENCE, JJ., concur.

Order entered October 24, 1983, affirmed.

Appeal from so much of the order dated December 16, 1983, as granted certain branches of Commodore's cross motion, dismissed. That portion of the order was superseded by the order entered February 17, 1984, made upon reargument and renewal.

So much of the order dated December 16, 1983, as was not superseded, modified, by dismissing the ninth cause of action in action No. 1. As so modified, order affirmed insofar as it was not superseded.

Order entered February 17, 1984, modified, by deleting the provisions thereof adhering to the original determination granting that branch of Commodore's cross motion which sought

summary judgment in action No. 2 in the principal sum of $975,000 but staying entry of judgment in Commodore's favor pending trial, and by substituting therefor a provision denying that branch of the cross motion. As so modified, order affirmed, and order dated December 16, 1983, modified accordingly.

Order dated April 9, 1984, modified, by deleting the provisions thereof which granted those branches of Commodore's motion which sought partial summary judgment on its third and fourth causes of action granting it leave to take immediate possession of certain collateral and dismissal of the eleventh and twelfth affirmative defenses and counterclaims in action No. 2, and substituting therefor provisions denying those branches of Commodore's motion. As so modified, order affirmed insofar as appealed from.

Computer and the Kornreichs are awarded one bill of costs payable by Commodore.