■ ELEK LEHOCZKY et al., Appellants, v NEW YORK STATE ELECTRIC & GAS CORPORATION et al., Respondents.—Weiss, J. Appeals (1) from four orders of the Supreme Court at Special Term (Lee, Jr., J.), entered May 2, 1985, May 9, 1985 and May 21, 1985 in Chemung County, which granted defendants' motions for summary judgment dismissing the amended complaint, and (2) from the judgments entered thereon

On August 24, 1982, defendant Lewis Tree Service, Inc. (Lewis), sprayed certain chemical herbicides for purposes of clearing foliage along a right-of-way belonging to defendant

New York State Electric & Gas Corporation (NYSEG) and located on property owned by plaintiffs. At the time, plaintiffs were engaged in the business of raising and selling cattle and maintained a herd of approximately 120 to 150 head. The herbicides used by Lewis included Garlon 4 and Tordon 101, produced by defendant Dow Chemical Company (Dow), and possibly Amdon 101, manufactured by Dow and marketed by defendant Union Carbide Agricultural Products Company (Union Carbide).

During September 1982, plaintiffs began experiencing difficulties with the herd, certain of which developed breathing difficulties and "unusual spots", and whose eyes "appeared abnormal". When 13 cattle died in September 1982, and miscarriages and stillbirths occurred, plaintiffs contacted the Rome Veterinary Clinic (the clinic). Dr. Frederick Lengemann, a veterinarian from the clinic, visited plaintiffs' farm on September 30, 1982 and indicated that the cattle may have been poisoned. Upon investigation, plaintiffs discovered that the area of the NYSEG right-of-way was "totally devoid of live vegetation" and plaintiffs were advised by a NYSEG representative that the aforementioned herbicides had been sprayed in that area. The physical condition of the herd, many of which refused to eat despite the use of a high quality feed, continued to deteriorate. On October 24, 1982, Dr. Joseph Clutter, also a veterinarian associated with the clinic, visited plaintiffs' property and arranged to have two of the cattle that had died that morning necropsied (i.e., examined postmortem) at Cornell University. Thereafter, Dr. John King, a veterinarian affiliated with Cornell, requested information from plaintiffs as to the chemicals used, visited plaintiffs' farm, and took fecal and blood samples from other members of the herd. The necropsy reports issued in November 1982 indicated malnutrition, parasitism and pneumonia as the causes of death.

Having lost more than 27 cattle, plaintiffs commenced the instant action against NYSEG and Lewis, contending that each was negligent in failing to warn plaintiffs of their intention to spray the right-of-way and in failing to take proper precautions. Plaintiffs seek damages for the injury to their herd and the effect on their reputation within the cattle industry. After Lewis and NYSEG commenced third-party actions against Dow and Union Carbide, plaintiffs amended their complaint to assert claims directly against these two corporations. Special Term granted each defendant's motion, made after joinder of issue and completion of discovery pro-

ceedings, for summary judgment dismissing plaintiffs' complaint. This appeal ensued.

In granting defendants' motions for summary judgment, Special Term concluded that plaintiffs failed to raise an issue of fact as to the causal relationship between the August 24, 1982 herbicide spraying and the subsequent deterioration of their herd. Plaintiffs assert that the court erred in this finding and, giving plaintiffs the benefit of every favorable inference to be drawn from the pleadings, affidavits and depositions, we agree *(see, Blake-Veeder Realty v Crayford,* 110 AD2d 1007, 1008). Resolution of this matter necessitates examination of the various affidavits presented by the parties. Defendants principally relied upon the affidavits of King and one Joanne Betso, a toxicologist employed by Dow, both of whom concluded with a reasonable degree of medical or scientific certainty that plaintiffs' cattle were not affected by the herbicide spraying in question. While unsworn written reports from King and Dr. Mary Smith, another veterinarian, were also presented to corroborate this conclusion and to attribute the herd problem to improper maintenance, neither of these documents was in proper evidentiary form and should have been excluded *(see, Zuckerman v City of New York,* 49 NY2d 557, 562). Nonetheless, based on the showing made by defendants, it was incumbent upon plaintiffs to come forward with an evidentiary basis for their claims *(supra).*

In opposition to the motion, plaintiff Elek Lehoczky submitted his own affidavit outlining the chain of events leading to the death of his cattle. While he was not actually qualified to render an opinion as to causation, he was competent to observe that the herd never experienced any similar problems prior to the herbicide spraying and to describe the abrupt deterioration in their condition. Plaintiffs also submitted the affidavits of Lengemann and Clutter. Lengemann opined that cattle do not usually die of malnutrition or parasitic diseases (as indicated in the necropsy reports) during the grazing season, and also indicated that the calf he examined on September 30, 1982 "acted like it was poisoned". In his affidavit, Clutter, who had visited plaintiffs' farm two days prior to the spraying, on August 22, 1982, and observed no problems with the herd, reiterated the proposition that malnutrition or parasitism is rarely the cause of death during the pertinent time frame. On the basis of his own observations and the underlying history, Clutter opined that the cattle deaths "could be considered the result of an 'unusual problem' * * * [and] it is a possibility that [plaintiffs'] animals died as a

result of herbicide poisoning". Finally, plaintiffs submitted the affidavit of Bruce McDuffie, a university professor with a doctorate degree in analytical chemistry, who similarly concluded that the evidence warranted "a possible finding" of causation.

While defendants challenge each of these expert affidavits as framed in terms of mere possibilities and thus conclusory in nature, looking to the substance and not the form, we find that each reflected an acceptable degree of certainty so as to be, in their totality, probative of the issue presented (see, Matott v Ward, 48 NY2d 455, 461). As indicated in the McDuffie affidavit and recognized in King's own report, the herbicides in question do not bioaccumulate in the body tissue. This being the case, it is not surprising that their presence was not detected in the necropsies performed, and it is doubtful that any direct evidence of herbicide poisoning was available. Moreover, since anorexia may also be a symptom of herbicide poisoning, the existence of malnutrition in several cattle is not necessarily dispositive because this diagnosis is as consistent with herbicide poisoning as it is with improper maintenance. Indeed, the records submitted by plaintiffs as to feed and health care reflect a schedule of proper maintenance. Taken in context, plaintiffs' affidavits clearly presented an arguable issue of fact as to causation sufficient to preclude an award of summary judgment (see, Brophy v Columbia County Agric. Socy., 116 AD2d 873; Computer Strategies v Commodore Business Machs., 105 AD2d 167, 175; Lane v New York State Elec. & Gas, 99 AD2d 597, 598).

We further note that several other factual issues as to the reasonableness of defendants' conduct are apparent. Reportedly at NYSEG's direction, plaintiffs were never forewarned that the spraying was to take place on their property. The map provided by NYSEG to Lewis depicting the rights-of-way to be maintained was approximately 50 years old and not always accurate as to the condition of the land. While the performance specifications issued by NYSEG, as well as the product labels, indicated that the herbicides were not to be used near active pasture land or water sources, the Lewis foreman indicated that he observed cattle within 500 feet of the right-of-way and saw visual signs of their presence in that area. Several watering ponds were also in the vicinity.

Accordingly, we conclude that triable issues of fact have been raised and that Special Term erred in granting summary judgment dismissing the amended complaint in its entirety.

Orders and judgments reversed, on the law, with costs, and

motions denied. Main, J. P., Casey, Weiss, Mikoll and Harvey, JJ., concur.