Simeon MORIN, et al., Plaintiffs,

v.

Barry H. TRUPIN, et al., Defendants.

Khalid F. AHMED, David Acquino, et al., Plaintiffs,

v.

Barry H. TRUPIN, Bennett W. Trupin, et al., Defendants.

Nos. 88 Civ. 5743 (RWS), 89 Civ. 7645 (RWS).

United States District Court, S.D. New York.

May 8, 1990.

Fink Weinberger, P.C., New York City, Attorney for Simeon Morin, et al.; Stephen E. Powers, Eric W. Berry, Paul R. McMenamin, of counsel.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Barry Trupin, RRI Realty Corp., BWT Corp. and Tara Jill Trupin 1983–O Trust; Jay Gordon, Martin H. Samson, of counsel.

O'Donnell, Fox & Gartner, P.C., New York City, for Khalid F. Ahmed, et al.; William S. O'Connell, of counsel.

Summit Rovins & Feldesman, New York City, pro se; John L. Amabile, of counsel.

---

## OPINION

SWEET, District Judge.

Plaintiffs in *Morin v. Trupin* and *Ahmed v. Trupin* move for an order of attachment against all property in New York State owned by defendant Barry H. Trupin ("Trupin"), RRI Realty Corp. ("RRI Realty"), and other defendants in these actions identified in the margin.[1] In addition, plaintiffs seek to restrain the law firm of Summit Rovins & Feldesman ("Summit"), formerly counsel to Trupin, RRI Realty, and certain other defendants in these actions, from foreclosing on a mortgage it holds on a property, known as Dragons Head, that is owned by defendant RRI Realty. For the reasons stated below, the motions are denied, subject to renewal upon further discovery.

### The Parties, the Actions and the Facts

The underlying disputes and principal parties which are the subject of these lawsuits are recounted in prior opinions of the court, familiarity with which is assumed. In brief, plaintiffs are individual investors in unsuccessful limited partnerships formed to own and operate commercial office space properties. Trupin and numerous other defendants are alleged to have induced the plaintiffs to invest in the limited partnerships by misrepresenting the soundness of the investment properties in partnership offering materials and, thereafter, to have looted and misappropriated limited partnership funds by exercising control over the general partners and managing agents of the limited partnerships.

The present motions seek an order of attachment upon a multi-million dollar residential property, Dragons Head, which is unrelated to the limited partnership investment properties but which is an asset of one of the defendants, RRI Realty. Mildred Trupin, Trupin's mother, is the president of RRI Realty. Defendant BWT Corp. ("BWT") allegedly owns RRI Realty, and BWT in turn is owned by The Tara Jill Trupin 1983–O Trust ("1983–O Trust"), of which Trupin was trustee at time of its formation in 1983.

RRI Realty purchased Dragons Head in 1979. RRI Realty has held title to the property since then. Plaintiffs allege on information and belief that the property is one of the few assets that remain available to satisfy the judgment they hope to obtain in these actions.

On November 22, 1988, defendant RRI Realty, by its president Mildred Trupin, delivered a two million dollar mortgage on the Dragons Head property to Rosemary LaSorsa, who at that time was employed as a legal secretary by the Summit law firm.

---

1. The *Morin* plaintiffs' motion also embraces the New York property of defendants Bennett W. Trupin, Rothschild Registry International, Inc., BWT Corporation, The Tara Jill Trupin Realty Corp., The Tara Jill Trupin 1983–O Trust, The Tara Jill Trupin 1983–A Trust, The Tara Jill Trupin 1980 Trust and The Tara Jill Trupin 1985–B Trust. *Morin* plaintiffs originally requested as well, but have reconsidered and have now withdrawn, an order of attachment against all New York property owned by defendants Gerald Schaffer, Marvin Schaffer, Frederick Gnesin, David Kaye, Herbert Silverstein, Robert Abrams, Stuart Stern, Arthur Berlin, Jerry Bills, Pass–Through Mortgage Corp., North American Associates and American Realty Associates. *Ahmed* plaintiffs more cautiously restricted their motion to attachment of property owned by Trupin or RRI Realty.

The Summit firm was at that time engaged as counsel by RRI Realty, Trupin and other defendants in these and other actions.[2] On June 7, 1989, Lasorsa assigned this mortgage to Summit. The mortgage secures a payment falling due on December 29, 1991.

### Prior Proceedings

On March 5, 1990, Summit filed a motion returnable March 9, 1990 seeking leave to withdraw as counsel to the noted defendants in these actions, on grounds of nonpayment of fees for past services rendered. Upon the hearing on that motion, plaintiffs opposed the withdrawal motion and cross-moved for an order of attachment against the defendants and for an injunction restraining Summit from foreclosing on its mortgage. Additional time was granted to the plaintiffs, defendants and Summit to file papers bearing on the attachment issues, resulting in further briefing and numerous submissions by plaintiffs and defendants up to May 1. Over plaintiffs' opposition, withdrawal was granted to Summit as against the defendants by order of March 30, 1990.

### Standards for Attachment

These motions for an order of attachment for security purposes are governed by Article 62 of the New York Civil Practice Law and Rules.[3] A threshold requirement is that plaintiff "show, by affidavit and such other written evidence as may be submitted, that there is a cause of action [and] that it is probable that the plaintiff will succeed on the merits." CPLR § 6212(a). In addition, the plaintiff must satisfy at least one of the statutory grounds for attachment set forth in CPLR § 6201. The particular grounds for attachment urged here are those stated in subdivisions (1) and (3) of that provision:

(1) the defendant is a non-domiciliary residing without the state, or is a foreign corporation not qualified to do business in the State; or ...

(3) the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts [ ]....

Although it might be thought that the warrant for attachment under the former ground of non-residence is limited to the purpose of obtaining quasi in rem jurisdiction (and not security) in circumstances in which the party against whom attachment is sought might not otherwise be subject to in personam jurisdiction, the interpretation of the non-residence provision is to the contrary. See ITC Entertainment, Ltd. v. Nelson Film Partners, 714 F.2d 217, 220 (2d Cir.1983) (the "statute continues to countenance attachments against nonresidents when appropriate to secure the judgment, even when unnecessary to secure jurisdiction") (citing New York cases). Thus, plaintiffs may rely on § 6201(1) to obtain an attachment of Trupin's New York property for purposes of securing a prospective judgment if Trupin is found to be a nondomiciliary residing without the state.

### Non–Resident Non–Domiciliary Status of Trupin

On the record to date plaintiffs have failed to establish Trupin's non-domiciliary status, but shall be permitted the opportunity to engage in further discovery on the question of Trupin's domicile and residence. Plaintiffs previously argued (for service of process reasons) that there is "overwhelming" proof that Trupin maintains a residence in New York as his usual abode, and has done so from 1986 to 1990. Plaintiffs

**2.** Included among such other actions was *RRI Realty Corp. v. Village of Southhampton*, 84 Civ. 3382, 1988 WL 73455 (CPS), *reversed,* 870 F.2d 911 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989), an extensive litigation brought by RRI Realty (but not Trupin) against the Town of Southhampton that was both tried and defended on appeal by the Summit firm. RRI Realty was awarded a judgment, later reversed on appeal, which included

a sum of $762,470.36 representing the amount incurred by it for attorney's fees and costs. 870 F.2d at 914.

**3.** The Federal Rules provide that seizure of property can be had "under the circumstances and in the manner provided by the law of the state in which the district court is held." Rule 64, Fed.R.Civ.P.

have not disavowed that prior showing, which points against a finding that Trupin is a non-domiciliary. Trupin, for his part, disagrees with the suggested past continuity of his residence in New York, but states by affidavit that he now resides in New York, much as he did permanently prior to 1986. Exactly where in New York City Trupin resides is open to question,[4] but Trupin's affidavit states his full intention to make New York again his permanent residence and that he has no intention of residing elsewhere.

■ The residential presence demanded of a defendant under the attachment provision is more substantial than that necessary to establish fair notice of service at a New York "dwelling place or usual place of abode" for process purposes. *ITC Entertainment, Ltd. v. Nelson Film Partners*, 714 F.2d at 221. Hence, the fact that defendant Trupin assertedly is (or was) amenable to service under CPLR § 308 by virtue of maintaining a suitable dwelling place within the state does not ineluctably dictate that he is a resident of New York under CPLR § 6201(1) and therefore not subject to an order of attachment. *Id.* Moreover, a defendant may not defeat an attachment motion grounded on non-residency simply by residing temporarily in a hotel room within the state for litigation purposes, away from his or her established permanent residence elsewhere. *Id.* As attachment is intended to protect against "defendant's ability to pack his bags, abandon his place of convenience within the state, and remain at his permanent residence outside the reach of New York enforcement procedures," the decision must "rest on practical judgments of whether the defendant is in fact a non-resident." *Id.* (citation omitted).

■ Trupin's convenient timing notwithstanding, the present record does not contain any affirmative evidence permitting the conclusion that Trupin resides *without* the state within the meaning of § 6201(1). In *ITC Entertainment*, the defendant was found to be a nonresident of New York in that his principal and permanent abode was clearly in another state, where he had lived for the past sixteen years with his family, voted and paid taxes, and had chosen to involve himself in civic activities. That defendant's ownership of, and occasional stays in, a cooperative apartment in a New York hotel for business purposes therefore failed to support his convenient claim of New York residency asserted in opposition to the attachment motion. *Id.* at 219, 222. Unlike *ITC Entertainment*, here no evidence is presented establishing a location other than New York at which Trupin maintains a permanent residence or place of abode. *See also Strater v. Strater*, 20 A.D.2d 889, 248 N.Y.S.2d 945, 946 (1st Dep't 1964) (defendant held non-domiciliary where he clearly had abandoned New York residence and established as his sole abode a city outside of the state); *Harshbarger v. Sherron Metallic Corp.*, 179 Misc. 1037, 40 N.Y.S.2d 651 (Sup.Ct.1943) (finding of non-residency despite defendant's lease of New York City apartment where defendant maintained a home and lived with family in New Jersey). Thus, Trupin's rediscovery of the virtues of life in New York may appear motivated by convenience, but the present state of the record does not indicate that he maintains a permanent residence in some other state to which he is likely to return.[5] Accordingly, § 6201(1)

---

**4.** Trupin's affidavit of March 30, 1990 stated that he had resumed his New York residence recently after having lived elsewhere from 1986 through December 1989, and was presently residing with his wife at the Hampshire House, 150 Central Park South, in a cooperative apartment which his wife owns. Three weeks later, on April 19, 1990, he was not available when *service in another action was attempted* at that address, and his lawyers advised the court shortly thereafter that the Hampshire House apartment had in that interim period been sold out from under him by his estranged wife. As of April 24, 1990, the court was advised that Trupin has moved to 520 East 72nd Street, Apt. 5G, and that he continues to intend to remain domiciled in New York. *Morin* plaintiffs have attempted on one occasion to serve Trupin there. They advise the court that he was not then present and the doorman at the building indicated the residence is owned by Sara Trupin, *who is his daughter.*

**5.** It may turn out to be that Trupin's situation resembles that of bandleader Jimmy Dorsey, who had "no permanent residence and his stay

provides no basis for an order of attachment at this time. The lack of clarity in the record and the less than forthcoming nature of Trupin's submissions to the court concerning his New York addresses do, however, support granting plaintiffs leave to conduct discovery on the residency issues. Trupin's deposition is in order in that connection.

*Trupin's Relationship to RRI Realty*

■ Were Trupin shown to be a non-domiciliary residing without the state, an attachment order against New York property that he owns personally might be appropriate under § 6201(1). However, title to the only particular parcel of property that plaintiffs identify as warranting attachment—Dragons Head—is held by defendant RRI Realty, not Trupin. There is no allegation made that RRI Realty is "a foreign corporation not qualified to do business in the State," CPLR § 6201(1), so as to warrant attachment of any of the property which it owns.[6]

Plaintiffs thus must overcome the general rule that requires a movant under § 6201 to "show the existence of a ground for attachment as to each defendant against whom he seeks a warrant." *Ford Motor Credit Co. v. Hickey Ford Sales, Inc.*, 62 N.Y.2d 291, 294, 476 N.Y.S.2d 791, 465 N.E.2d 330 (1984). Plaintiffs attempt to do so by asserting that RRI Realty is a dummy, or alter-ego, corporation dominated by Trupin, and therefore, that RRI Realty's property is subject to attachment based on Trupin's, rather than its own, non-residence. The basis for plaintiffs' contention of domination and control are that RRI Realty is owned by defendant BWT Corp., which in turn is owned by a trust (defendant 1983–O Trust) of which

Trupin has been identified as trustee. Plaintiffs further note that Trupin's mother, Mildred Trupin, serves as president of RRI Realty.

Trupin denies that RRI Realty is his alter ego, swearing in his responsive affidavit on personal knowledge that he does not own RRI Realty, and that he is not the trustee of any trust (or a shareholder of any corporation) which directly or indirectly owns any shares of RRI Realty. The documents adverted to by plaintiffs as demonstrating Trupin's indirect control over Dragons Head show only that Trupin was trustee of the 1983–O Trust on May 13, 1983, the date of its formation, and further reveal that as of November 2, 1983, Trupin had resigned as trustee and that his mother, Mildred Trupin, was appointed trustee.

Trupin's non-ownership of RRI Realty does not absolutely foreclose a showing of an alter ego relationship, since despite his mother's apparent ownership/control of RRI Realty, it remains a possibility that he is "the real and controlling party in interest." *Establissement Tomis v. Shearson Hayden Stone, Inc.*, 459 F.Supp. 1355, 1366 n. 13 (S.D.N.Y.1978). Nevertheless, there is a "presumption of corporate regularity" and "the party contending that the corporate entity should be disregarded carries the burden of establishing a basis for so doing." *Id.* at 1365 (citations omitted).

Plaintiffs have not met that burden. This record presents little or no evidence from which it may be inferred that Trupin exercises actual dominion or control over RRI Realty or that RRI Realty's "corporate form is ignored by the corporation's proprietors." Restatement (Second) of Judgments § 59, comment e (1982), *quoted in Aetna Casualty and Surety Co. v.*

---

in a New York Hotel, though temporary, was his only place of abode at the time...." *Rudes Corp. v. Farid Sons, Ltd.*, 3 Misc.2d 861, 862, 157 N.Y.S.2d 44 (Mun.Ct.), *aff'd*, 3 Misc.2d 862, 157 N.Y.S.2d 1023 (Sup.Ct.App. Term 1956) (distinguishing *Loew's, Inc. v. Dorsey*, 197 Misc. 1069, 97 N.Y.S.2d 315 (Sup.Ct.1950)), *cited in ITC Entertainment, Ltd.*, 714 F.2d at 221 n. 4.

**6.** There apparently is no factual dispute that RRI Realty is a New York corporation formed

in 1979 for the purpose of acquiring title to certain real property in Southhampton that is commonly known as Dragons Head. That property was acquired by RRI Realty by deed dated October 3, 1979 and since then the property has been owned by RRI Realty. Plaintiffs do not show that RRI Realty has engaged in business activities other than the acquisition, ownership and improvement of Dragons Head, which is currently offered for sale.

*Kerr–McGee Chemical Corp.*, 875 F.2d 1252, 1259 (7th Cir.1989); *see also Cargill Investor Services, Inc. v. Cooperstein*, 587 F.Supp. 13, 15 (S.D.N.Y.1984). Plaintiffs assert that Trupin caused RRI Realty to issue the mortgage on Dragons Head to Summit, but offer no evidence for that proposition. The fact that Trupin's mother presides over the company, and is trustee of the trust which owns the company, by itself falls short of the evidence necessary to support an order of attachment against RRI Realty property grounded upon Trupin's non-residence. *See Establissement Tomis*, 459 F.Supp. at 1366 & n. 13 (suggesting possibility of finding alter ego relationship between individual and a corporation wholly owned by individual's spouse, if evidence additionally showed monetary transfers from corporation to the couple lacking in consideration and that corporate formalities were ignored). Accordingly, plaintiffs fail to justify "effac[ing] the separate legal identity of the corporation ..." under the alter ego theory. Restatement (Second) of Judgments § 59, comment e (1982).[7]

*Fraudulent Assignment*

■ CPLR § 6201(3), which provides an independent basis for attachment, "requires the showing of two elements: (1) that the defendant 'has assigned, disposed of, encumbered or secreted property, or removed it from the state' or is about to do any of these things and (2) that the defendant has acted or will act with intent to defraud...." 7A Weinstein, Korn & Miller, *New York Civil Practice*, ¶ 6201.12 at 62–32 (citing cases). Plaintiffs have not satisfied these requirements with respect to any of the defendants.

The factual predicate advanced in support of this ground is the delivery by RRI Realty of a $2 million dollar mortgage to LaSorsa, a legal secretary to Summit, in November 1988, and the subsequent assignment of the mortgage by LaSorsa to the Summit firm in June 1989. Although Trupin is alleged by plaintiffs to have caused this transfer, as noted, no evidence has yet been submitted to support that assertion, nor to buttress the suggestion that Dragons Head is property that RRI Realty purchased with funds that Trupin had secreted from the limited partnerships in which plaintiffs invested. While information may come to light in the future to vitalize those claims, at the moment plaintiffs' case for an attachment order depends upon demonstrating that the mortgage executed by RRI Realty, via LaSorsa, to its legal counsel Summit, was intended by RRI Realty to defraud plaintiffs as potential judgment creditors.

To that end, plaintiffs assert on information and belief that the mortgage was delivered to Summit without consideration, the implication being that Summit had agreed to shelter assets of the defendants in an effort to defraud potential creditors. Facts in the record belie that unsupported claim. Summit has established by affidavit that RRI Realty and other defendants in this action were its client at the time the mortgage was delivered to its nominee LaSorsa and that the mortgage was taken to secure sizeable legal fees then due and to become due arising from its substantial representation of RRI Realty, Trupin and other defendants in particular proceedings.[8] The record in no way discredits that evidence.

---

7. No more availing is plaintiffs' suggestion that the court "pierce the corporate veil" of RRI Reality. That doctrine, which is an exception to the insulation against liability provided by state law to the shareholders of corporations, theoretically might be stretched to support forcing the *alleged ultimate owner* of RRI Realty, 1983–O Trust (or its trustee, Mildred Trupin), to stand in for RRI Realty as owner of Dragons Head, for purposes of attachment. Plaintiffs, however, have not articulated grounds supporting attachment of resources owned by either Mildred Trupin or the 1983–O Trust (whether by virtue of their residential status or otherwise), and, for the reasons stated in the text, the

record does not at this stage disclose that Barry Trupin lies behind the veil of RRI Realty (either generally or with respect to any particular transaction). *See Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 853 (2d Cir.1985) (noting standards under New York law for determining when a parent may be held liable for acts of its subsidiaries).

8. More specifically, former counsel of record states that Summit had undertaken substantial representation of RRI Realty and numerous other defendants including Trupin in this and other lawsuits (including the *Southhampton* litigation in which RRI Realty was the sole plaintiff); had

New York law is clear that in the attachment context, "[f]rom disposition of the property no presumption of intent to defraud arises. Such intent must be proved, and the facts relied upon to prove it must be fully set out in the moving affidavits." *Eaton Factors Co., Inc. v. Double Eagle Corp.*, 17 A.D.2d 135, 136, 232 N.Y.S.2d 901 (1st Dept.1962) (citing 10 Carmody–Wait, *New York Practice* at 51). *See also Rosenthal v. Rochester Button Co., Inc.*, 148 A.D.2d 375, 376, 539 N.Y.S.2d 11 (1st Dept.1989); *Laco X–Ray Systems, Inc. v. Fingerhut*, 88 A.D.2d 425, 429, 453 N.Y. S.2d 757 (2d Dept.1982). Here, the record establishes only that defendant RRI Realty executed a mortgage on property it owned to secure legal fees that were due and additional fees that were anticipated to become due. From that showing, an intent to defraud creditors may not fairly be inferred.

■■■■ As a substitute showing, plaintiffs seek to justify attachment by establishing that the delivery of the mortgage to Summit constituted a fraudulent conveyance within the meaning of § 273 of New York's Debtor and Creditor Law. As a matter of law, that effort is misplaced, since an attachment under CPLR § 6201(3) requires a demonstration that the defendant whose property is sought to be attached disposed of property "with intent to defraud his creditors," while the Debtor and Creditor Law provision in question by its own terms operates "without regard to . . . actual intent" of the person making the conveyance. N.Y. Debtor and Creditor Law § 273. *Cf. Computer Strategies, Inc. v. Commodore Business Machines, Inc.*, 105 A.D.2d 167, 173, 483 N.Y.S.2d 716 (2d Dept.1984), *appeal denied*, 110 A.D.2d 743, 488 N.Y.S.2d 616 (2d Dept.1985) (under § 6201(3), "allegations raising a suspicion of intent to defraud is not enough. It must appear that such fraudulent intent really existed in the defendant's mind.") *with Schmitt v. Morgan*, 98 A.D.2d 934, 471 N.Y.S.2d 365 (3d Dept.1983), *appeal dismissed*, 62 N.Y.2d 914, 479 N.Y.S.2d 9, 467 N.E.2d 893 (1984) (under § 273, any transfer by an insolvent debtor for less than fair consideration is fraud as against creditors without regard to actual intent). *See also Maro Hosiery Corp. v. Hann*, 59 A.D.2d 674, 398 N.Y.S.2d 433 (1st Dept.1977) (order of attachment appropriate upon evidence supporting finding of "actual intent" to convey property fraudulently under Debtor and Creditor Law § 276 and CPLR § 273). Accordingly, this effort at satisfying § 273 of the Debtor and Creditor Law does not warrant an order of attachment under CPLR § 6201(3).[9]

incurred substantial fees for which it was then owed payment by RRI Realty and such other clients (including fees in excess of $760,000 in the *Southhampton* litigation alone); expected that the sums it was owed would increase in the future as a result of its rendering additional legal services in particular proceedings; that Summit therefore requested and was given the mortgage as security for such fees due and to become due in the *Southhampton* case and in other pending litigated matters, against the possibility that Summit and another law firm would not receive payment prior to the December 31, 1991 maturity date of the mortgage; that it decided to employ LaSorsa as its nominee based upon its judgment that "financial transactions between [its] clients and the firm were not a matter for public consumption;" that it nevertheless did not conceal the fact of the encumbrance upon the property from public view, since it filed the mortgage with the county clerk, making the issuance of the mortgage on RRI Realty's property a matter of public record; and that Summit, in taking the mortgage, had no intention to defraud potential creditors of Trupin or RRI Realty, but rather, sought only to insure that the law firm would be paid for the legal services.

9. Even on the legally unsupported assumption that § 273 of the Debtor and Creditor Law provides a corrective gloss on CPLR § 6201(3)'s more robust standard of fraudulent intent, plaintiffs fail to demonstrate the conveyance by RRI Realty was fraudulent within the meaning of § 273, since, among other things, RRI Realty has not been shown to have been insolvent, either at the time it executed the mortgage or after doing so. Plaintiffs submit no evidence of RRI Realty's financial condition at present or at the time of execution of the mortgage. Plaintiffs' case instead is based on a number of judgments that have been entered against certain of the other defendants but the identified judgments do not bear directly on RRI Realty's solvency since none was rendered against RRI Realty. Although plaintiffs do not address the question, a more appropriate remedy might be found under § 273-a of the New York Debtor and Creditor Law, which allows to be set aside as fraudulent—regardless of solvency or actual

*Discovery*

■ The court recognizes that plaintiffs' difficulty in satisfying the evidentiary burdens imposed by the Civil Practice Law and Rules upon those seeking attachment orders relates to the limited discovery that has thus far been obtained.[10] Plaintiffs at this juncture therefore will be permitted the opportunity to conduct discovery concerning Trupin's residence and domicile and Trupin's relationship to RRI Realty and its principal asset, Dragons Head.

*Conclusion*

For the reasons stated above, the motion for attachment of the New York property of the defendants are denied, as is the request for a preliminary injunction to restrain Summit from foreclosing on the mortgage it holds on the property known as Dragons Head. Discovery from defendant Trupin shall be permitted on the subjects of his residence and domicile and his relationship to RRI Realty and its assets.

It is so ordered.

intent—any conveyance made without fair consideration when the person making it is at the time a defendant in an action for money damages "if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." N.Y. Debtor and Creditor Law § 273–a. Such a claim would at this point be premature since plaintiffs have not yet obtained any judgment against defendants. *See Cohan v. Misthopoulos,* 118 A.D.2d 530, 499 N.Y.S.2d 157 (2d Dept.1986) (existence of unsatisfied final judgment an essential element of claim under § 273–a).

**10.** Those limitations may explain the *Morin* plaintiffs rather loose use of "facts" and assertions predicated on information and belief, such as that Trupin's wife was the president of RRI

Realty, that a title report indicated Barry Trupin caused title of Dragons Head Lot 13 to be conveyed to United States Trust Company in an effort to frustrate judgment creditors, and that funds withdrawn by check from a particular partnership property were made out to RRI Realty as payee. Even more disturbing is the bringing of the attachment motion against numerous defendants against whom no showing of cause was even attempted by counsel in *Morin*. Although the court declines to grant the defendants and Summit's request for sanctions at this stage, future conduct exhibiting an equally careless or cavalier treatment of facts may not be so lightly tolerated.